# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

IN RE: BANK OF AMERICA
WAGE AND HOUR EMPLOYMENT
LITIGATION                                   No.  10-MD-2138-JWL

This Order Relates to All Cases
_____

## MEMORANDUM & ORDER

This multidistrict litigation proceeding consolidates numerous putative collective and class actions against Bank of America, N.A. and related entities ("the Bank") on behalf of current and former non-exempt retail branch and call center employees alleging violations of both federal and state wage and hour laws.  Plaintiffs' consolidated complaint includes class claims (on behalf of a putative California class) arising out of the Bank's alleged issuance of wage statements that did not include all information required under section 226(a) of the California Labor Code.

This matter is presently before the court on plaintiffs' motion to enjoin the Bank from proceeding with a proposed settlement that has been preliminarily approved in *Lopez v. Bank of America*, Case No. 3:10-cv-01207, a case presently pending in the Northern District of California and alleging class claims (on behalf of a class of current and former Bank employees who worked or are presently working in California) arising out of the Bank's alleged issuance of wage statements that did not comply with section 226(a) of the California Labor Code.  It is undisputed that the class in *Lopez* overlaps with the putative California class in these

proceedings. It is further undisputed (indeed, the Bank concedes) that the release of claims set forth in the *Lopez* settlement agreement, as presently drafted, will extinguish claims at issue in this MDL proceeding. Despite this significant and obvious overlap between *Lopez* and the cases consolidated by the Judicial Panel on Multidistrict Litigation (JPML) in these proceedings, the Bank did not disclose *Lopez* to the JPML or to this court at any time–undermining the integrity of the MDL process and disregarding direct orders of this court. For these reasons, and after carefully considering the parties' written submissions as well as oral arguments presented by the parties at the August 30, 2010 motion hearing, the court will enjoin the Bank from issuing the Notice of Proposed Class Action Settlement to the *Lopez* class members until it has disclosed *Lopez* to the JPML and allowed the JPML to determine in the first instance whether *Lopez* should be transferred to this District for consolidation with the cases pending here.[1]

**Findings of Fact**

On December 31, 2007, plaintiffs Albert Lopez and Rene Pompa filed a Rule 23 class action against the Bank in California state court alleging violations of the California Labor Code, including a failure to provide required meal and rest periods and a failure to provide

---

[1]Significantly, the Bank conceded at oral argument that, in light of the overlap between *Lopez* and this MDL, it would be appropriate and even necessary–prior to the *Lopez* settlement moving forward–to modify certain language in both the Release of Claims in the *Lopez* settlement agreement and the Notice of Proposed Class Action Settlement to the *Lopez* class members.

2

accurate wage statements under section 226(a) of the California Labor Code.  Section 226(a) of the California Labor Code requires employers to provide to covered employees "an accurate itemized statement in writing" showing, *inter alia*, gross wages earned; total hours worked; net wages earned; dates of the applicable pay period; and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."  Cal. Labor Code § 226(a).  In support of their section 226(a) claims, the *Lopez* plaintiffs primarily alleged that the Bank violated section 226(a) by establishing one pay period for the payment of wages and a separate pay period for the payment of exception time (including overtime pay) such that an employee's wage statement for a given pay period would not reflect overtime hours worked during that pay period but might reflect overtime hours worked for the preceding pay period.  In other words, according to the *Lopez* plaintiffs, their wage statements did not accurately reflect the actual number of hours that they had worked or the actual wages that they had earned during a particular pay period.  The Bank describes this type of section 226(a) claim as a "stand alone" or "non-derivative" section 226(a) claim.

In September 2008, the parties decided to attempt to resolve the case through mediation.  The parties prepared extensively for mediation and they participated in two mediation sessions in April 2009 and June 2009, respectively.  After the second mediation session, the parties reached a tentative settlement agreement covering the plaintiffs meal and rest periods claims and their inaccurate wage statement claims.  In September 2009, the parties in the *Lopez* matter sought preliminary approval of the class action settlement before the state court.  In October

2009, the state court denied the parties' motion for preliminary approval of the settlement for reasons that are not germane to this proceeding. Settlement discussions resumed at some point thereafter.

In the meantime, on December 10, 2009, the Bank moved the JPML to transfer twelve (12) actions, including two actions filed in this district, to the Central District of California for coordinated pretrial proceedings. In their motion, Bank of America requested an order "transferring . . . all pending and yet-to-be filed federal actions arising from alleged wage and hour violations allegedly committed by Defendants, and allegedly giving rise to claims for unpaid wages, missed meal and rest periods, inaccurate wage statements and related penalties under state and federal law." Pertinent to the issues before the court today, the Bank represented to the JPML that seven (7) of the actions asserted violations of the California Labor Code for "failure to provide and/or pay a premium wage for meal and rest periods allegedly not taken, and alleged failure to provide accurate itemized wage statements." The Bank asserted that common factual issues in the seven cases included whether the Bank failed to provide state-mandated meal and rest periods; whether plaintiffs are entitled to payment of a premium wage for meal and rest periods allegedly not taken; and whether the Bank failed to provide accurate itemized wage statements.

At the time the Bank filed its motion with the JPML, the *Lopez* case was still pending in California state court and, thus, the Bank was not obligated to disclose it. The parties in the *Lopez* matter participated in a third mediation session on March 1, 2010 and again agreed to a

4

settlement in principle. As part of that agreement, plaintiffs' counsel in *Lopez* agreed to abandon the meal and rest period claims and proceed solely on the inaccurate wage statement claims. Thereafter, the *Lopez* plaintiffs amended their state court complaint to name as defendants two entities affiliated with the Bank, rendering the case removable under the minimal diversity requirements of the Class Action Fairness Act. The amended complaint, however, retained the meal and rest period claims. On March 23, 2010, the Bank removed the action to the Northern District of California and the parties consented to jurisdiction by a magistrate judge.[2] At the time the case was removed, then, the meal and rest period claims remained in the case.

As part of the removal process, the Bank was required (under the local rules of the Northern District of California) to file a Notice of Pendency of Other Actions identifying any actions "which involve all or a material part of the same subject matter, and all or substantially all of the same parties" as the *Lopez* case. In that filing, the Bank advised the court that *Lopez* "overlaps" with many of the cases that it was seeking to consolidate before the JPML with respect to meal and rest period claims and inaccurate wage statement claims, but stated its alleged belief that "it would not be productive" to coordinate *Lopez* with any matters pending coordination before the JPML because the parties in *Lopez* "are close to achieving and finalizing a settlement that the parties will submit to the court for preliminary approval in the

---

[2]The day before removing *Lopez* to federal court, the Bank amended its motion to transfer then-pending before the JPML to identify two additional related federal actions.

upcoming months." The Bank further noted that if a final settlement was not achieved, it would consider requesting that the JPML coordinate the *Lopez* matter with the other matters.

Two days after the Bank removed *Lopez* to federal court, the JPML held oral argument on the Bank's motion to transfer and consolidate. At the time of oral argument, then, *Lopez* was undisputedly a pending federal action alleging meal and rest period claims and inaccurate wage statements claims under California state law. Although the Bank insists the case had been settled "in principle," no agreement had been executed and the parties had not yet sought preliminary approval from the court. Moreover, the Bank's statements to the *Lopez* court in its Notice of Pendency of Related Actions suggest that a final settlement was not necessarily imminent–the Bank indicated that the parties were close to "achieving" a settlement and that papers would be filed in the "upcoming months." Despite its knowledge of *Lopez*–a pending federal action with claims identical to those claims described by the Bank in its own motion to transfer (*i.e.*, meal and rest period claims and inaccurate wage statement claims)–the Bank did not disclose to the JPML at oral argument the existence of the *Lopez* matter.[3] In fairness to the Bank's MDL counsel, a different law firm is representing the Bank in connection with the *Lopez* matter and it appears that the Bank's MDL counsel was not made aware of the *Lopez*

---

[3]As will be explained later, the court concludes that the Bank was obligated to disclose *Lopez* to the JPML. *See* JPML Rule 7.5(e) ("Any party or counsel in actions . . . under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential 'tag-along actions' in which that party is also named or in which that counsel appears.") & 1.1 ("A 'tag-along action' refers to a civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407.").

case until some time after oral argument before the JPML.[4]  In any event, on April 14, 2010, the JPML issued its order transferring ten (10) actions to this district for consolidation with the two actions pending here and assigning those actions to the undersigned judge for coordinated pretrial proceedings.

On April 23, 2010, this court issued its Preliminary Practice and Procedure Order which set an initial scheduling conference for May 14, 2010.  The order further directed the parties, no later than May 10, 2010, to provide a brief written statement to the court identifying, among other things, "all related cases pending in state or federal court, together with their current status, including any discovery taken to date."  The Bank did not identify *Lopez* in its statement to the court.[5]  On May 14, 2010, the court held the initial scheduling conference and, again, the Bank did not disclose the *Lopez* matter.  After the conference, the court issued its Practice and Procedure Order No. 2 which provided that "[a]ny discussions of a settlement that would affect any claims brought in this litigation . . . must be conducted by plaintiffs' lead counsel.  Any proposed settlement that resolves, in whole or in part, the claims brought in this action shall first be subject to review and approval by the Court in this litigation."  On the same day as the initial scheduling conference and the issuance of the court's second practice and procedure order,  the *Lopez* plaintiffs filed an amended complaint in federal court withdrawing their claims

---

[4]Of course, the fact that the Bank has decided to utilize different counsel for the *Lopez* case than the MDL case does not excuse the Bank from its obligations to disclose the *Lopez* matter.

[5]The Bank did identify other state court cases.

concerning meal and rest periods, leaving only their claims concerning inaccurate wage statements.

On June 4, 2010, plaintiffs in these proceedings filed a consolidated complaint alleging, in Count V of that complaint, a Rule 23 class claim for failing to provide accurate wage statements under section 226(a) of the California Labor Code. While the Bank concedes that many of the underlying actions in this proceeding, prior to consolidation by the JPML, contained section 226(a) claims for failure to provide accurate wage statements and that such claims "overlapped" with *Lopez*, the Bank asserts that plaintiffs' consolidated complaint alleges only "derivative" claims under section 226(a) that do not overlap with *Lopez* and, in fact, directly contradict the allegations in *Lopez*. At oral argument, plaintiffs urged that the section 226(a) claims contained in the consolidated complaint are not solely "derivative" claims but also "non-derivative" or "stand alone" section 226(a) claims.

A fair reading of the allegations in Count V supports plaintiffs' contention at oral argument that the complaint asserts non-derivative section 226(a) claims as well as derivative section 226(a) claims. Plaintiffs allege in Count V that the Bank failed to provide an itemization of total hours worked "per paycheck" (similar to the allegations in *Lopez*) and that this failure to identify the total number of hours worked "assisted" the Bank in perpetrating its policy of not paying employees for all hours worked by rendering it difficult for employees to discern whether the Bank was compensating them appropriately. These allegations suggest more than a "derivative" claim under section 226(a) and, in fact, describe a violation of section

226(a) wholly independent from any overtime violations alleged by plaintiffs. The court, then, finds that plaintiffs' consolidated complaint alleges, using the Bank's nomenclature, "stand alone" or "non-derivative" claims under section 226(a).[6]

In early July 2010, the parties in the *Lopez* matter executed a formal settlement agreement concerning the plaintiffs' inaccurate wage statement claims under section 226(a) of the California Labor Code. The settlement requires class members to release "all known and unknown claims to the fullest extent permitted by law, that arise from this Action during the Release Period, under Labor code section 226." As explained by the parties in the settlement release:

> [W]hile this release is intended by the Parties to bar both derivative and stand-alone Section 226 claims, it does not bar claims that form the basis of a derivative Section 226 claim. This release for inaccurate wage statements is just a release of Labor Code section 226. For example, this release does not bar an overtime claim where the failure to pay the overtime may also form the basis of an improper wage statement and/or recordkeeping claim under Section 226.

In addition, the proposed Class Action Notice agreed upon by the parties cautions class members as follows:

> Please be advised that there are other wage-and-hour cases pending against the Bank, including cases that allege claims for California pay stub violations. These other cases have been combined into a single matter called In re Bank of America Wage-and-Hour Employment Practices Litigation, MDL No. 2138, which is in the U.S. District Court of the District of Kansas. This

---

[6]The court expresses no opinion on whether these allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss. The court simply finds that, unlike the Bank's contention, the allegations in the complaint do not "directly contradict" the allegations in *Lopez* and, in fact, are akin to the allegations in *Lopez*.

combined matter is a nationwide case, but has as one component a California paystub claim. Because this Lopez Action is solely a paystub claim, there is an overlap. You could be a class member in the Kansas case. If you choose to participate in the Lopez paystub settlement (by either claiming or doing nothing), the release in this Lopez Action likely will prevent you from participating in or collecting a recovery in a Kansas paystub settlement or verdict, in whole or in part. There is no guarantee that the Kansas case will give you any, equal or greater money for your paystub claim. However, even if you participate in this settlement (either by submitting a claim or by doing nothing), you are still able to participate in the Kansas case for the portions that do not overlap with the Lopez Action.

The magistrate judge preliminarily approved the parties' settlement on July 28, 2010. The following day, plaintiffs' counsel in these proceedings read about the *Lopez* preliminary settlement in an online daily legal news service. Plaintiffs' motion to enjoin the Bank from proceeding with the settlement followed shortly thereafter.

**Conclusions of Law**

The All Writs Act provides that: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act confers on courts "extraordinary powers that are firmly circumscribed." *Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322, 328 (3rd Cir. 2007) (quotations and citations omitted). The vast majority of opinions addressing the scope of a district court's authority to issue an injunction under the All Writs Act concern federal courts enjoining actions by state courts that threaten the federal court's jurisdiction. *See id.*; *Negrete v. Allianz Life Ins. Co. of North Am.*,

523 F.3d 1091, 1099 (9th Cir. 2008). Specifically, the All Writs Act has generally been used to either prohibit activities in a state court proceeding that threaten to undermine a pending settlement in the enjoining federal court, or to block settlement efforts in a state court proceeding when a party was deliberately using the state court forum to circumvent a pending settlement agreement in the enjoining federal court. *Grider*, 500 F.3d at 330-31.

In both *Grider* and *Negrete*, the Third and Ninth Circuits, respectively, relied in part on these principles in setting aside an injunction order issued by a federal district court against other federal courts.[7] In *Grider*, a class of physicians filed suit in the Eastern District of Pennsylvania against a health maintenance organization alleging that the plan's claim-handling practices violated federal and state law. *Id*. at 323. Around that time, similar nationwide claims were consolidated by the JPML in the United States District Court for the Southern District of Florida. *Id*. The JPML declined to add the *Grider* case to the MDL as a tag-along action because it was at a more advanced stage in its proceedings. *Id*. When the MDL proceedings moved towards a comprehensive settlement agreement, the district court in *Grider* issued an injunction under the All Writs Act prohibiting the *Grider* defendants from settling or attempting to settle claims in the MDL that would have the effect of also settling the claims in *Grider*. *Id*.

---

[7]While plaintiffs here ask the court to enjoin the Bank from proceeding with the *Lopez* settlement, the court understands that an injunction ordering the Bank not to proceed is tantamount to enjoining the *Lopez* proceedings. *Negrete*, 523 F.3d at 1098 (quotation omitted).

The Third Circuit vacated the injunction in part because there was no pending settlement in the enjoining court, but also because the other federal court was an MDL court "charged with attempting to reach a global settlement," there was no evidence of any wrongdoing on the part of the *Grider* defendants and the *Grider* class members had adequate remedies at law by virtue of the objection procedure in Federal Rule of Civil Procedure 23(e). *Id*. at 331-32. In light of those circumstances, the Third Circuit ultimately concluded that there was no evidence that any action in the MDL court threatened to interfere with the *Grider* court's "own path to judgment;" rather, the MDL court simply "threatened to reach judgment first," rendering the injunction wholly inappropriate. *Id*. at 333.

In *Negrete*, the United States District Court for the Central District of California certified a nationwide class of purchasers of the defendant insurance company's fixed deferred annuities. 523 F.3d at 1094. Around that time, several similar RICO class actions were filed against the defendant in various federal and state courts and some of the classes certified in other actions partially overlapped with the *Negrete* class. *Id*. After the parties in certain other actions moved toward a settlement that counsel for the *Negrete* class feared "could extend to extinguish the claims of the class in *Negrete*," Negrete counsel sought and obtained an order from the district court in *Negrete* preventing the defendant from proceeding with any settlement negotiations on similar class action claims raised in any other court without first obtaining permission from Negrete counsel and from finalizing a settlement in any other court that resolved, in whole or

in part, the claims brought in *Negrete* without first obtaining approval from the district court in *Negrete*. *Id*. at 1094-95.

The defendant appealed the district court's order and the Ninth Circuit reversed the district court, holding that it was improper to issue an injunction against other federal and state court proceedings. *Id*. at 1103. In doing so, the Circuit emphasized that "[n]o settlement was directly in prospect in this case" so that it could not be said "that a settlement was being circumvented or co-opted." *Id*. at 1099. The Circuit also highlighted that there was no evidence of collusion. *Id*. Finally, in summarizing that "none of the considerations that have induced courts to issue injunctions" was present, the Circuit noted that "[t]his was not an MDL case." *Id*. at 1103.

The Bank's submissions to the court rely extensively on *Grider* and *Negrete*, then, for the proposition that the court would abuse its discretion by enjoining the *Lopez* settlement because the proceedings here are simply not advanced enough to justify an injunction–not only is there no settlement in sight but no class has been certified. To be sure, as recognized in both *Grider* and *Negrete*, the extent to which proceedings have advanced in the enjoining court is typically a significant consideration in determining whether the issuance of an injunction is appropriate. *See also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Lit.*, 134 F.3d 133, 144-45 (3rd Cir. 1998) (MDL court correctly determined that injunction against state court proceedings was not justified where MDL court was not considering nationwide settlement). But as conceded by the Bank's counsel at oral argument, both *Grider*

and *Negrete* (and, indeed, every other case relied upon by the Bank) are distinguishable in that none of those cases concerned a defendant attempting to settle a tag-along action outside the context of an MDL after deliberately or inadvertently failing to disclose the case to the JPML or the MDL court. The court believes that this distinction is a significant one.

As the court advised the parties at oral argument, it is concerned with protecting the integrity of the MDL process–a process that Congress created and the federal courts have attempted to implement in an effort to coordinate and manage certain complex litigation for the purpose of avoiding conflicting decisions and fostering economy and efficiency in judicial administration in lieu of the potential chaos which could result from litigating related issues in different courts all over the country. As the Third Circuit recognized in *Grider*, an MDL court is charged with conserving judicial resources by "resolving as many claims as possible" and, if appropriate, to "achieve a global settlement that appropriately and fairly deals with a range of claims." 500 F.3d at 333. By turning a blind eye to the Bank's failure to disclose *Lopez* at any point in these proceedings, the court actually facilitates the limiting of its ability to comprehensively manage the matter before it–"the very purpose of such a consolidation." *Id.* at 333-34. The fact that these proceedings have not reached the point of settlement negotiations, then, is not nearly as compelling to the court in light of the fact that the Bank has undermined the MDL process and violated this court's specific orders by failing to disclose a related case–despite a clear duty to do so–and then attempting to settle claims in that related case that will extinguish claims in this MDL.

14

Indeed, in the case most analogous to the facts here, an MDL court–emphasizing its role as an MDL court–enjoined a defendant from participating in a settlement in another federal district court.  In that case, *In re Managed Care Litigation*, the United States District Court for the Southern District of Florida was the site of the multidistrict consolidation on the matters at issue in *Grider*.  236 F. Supp. 2d 1336 (S.D.Fla. 2002); *Grider*, 500 F.3d at 331, 333.  The MDL court had been managing the case for over 2 years and had recently issued an order granting class certification status (notably, however, the MDL proceedings were "far from settlement")  when it was discovered that one of the defendants, CIGNA, had requested and received preliminary approval of a settlement in the United States District Court for the Southern District of Illinois.  236 F. Supp. 2d at 1338-39.  The settlement purported to settle claims that were at issue in the MDL.  *Id.* at 1338.  In analyzing the plaintiffs' motion to enjoin CIGNA from proceeding with the settlement, the MDL court emphasized that "an MDL court entertaining complex issues has the authority to be particularly vigilant and protective of its jurisdiction," and cited numerous cases recognizing the necessity for an MDL court to exercise its power pursuant to the All Writs Act to protect its jurisdiction.  *Id.* at 1341.

In issuing the injunction requested by plaintiffs, the MDL court also emphasized CIGNA's violation of MDL Rule 7.5(e) by failing to inform the MDL Panel of the pendency of the tagalong action in the Illinois federal court until after preliminary approval of the settlement and after the plaintiffs filed their motion for injunctive relief.  *Id*. at 1342.  As the court explained:

> Admittedly, in most instances, the issuance of an injunction would be in order to *protect* a settlement. Here, instead this Court seeks to *prevent* a settlement. This Court is well aware of the strong public interest favoring settlements. However, it cannot turn a blind eye to the underhanded maneuvers CIGNA took to obtain this settlement agreement. CIGNA snookered both this Court and Judge Murphy in Illinois in an obvious attempt to avoid this Court's jurisdiction. CIGNA settled the claims of this Court's Plaintiff class and yet seeks approval from another judge in Illinois without informing that judge, apparently, of the proceedings in this case.

*Id.* at 1342. According to the MDL court, CIGNA's "maneuverings" were also inconsistent with the "entire spirit of and rationale behind the JPML and the MDL Rules." *Id.* Ultimately, the MDL court concluded that issuance of an injunction preventing CIGNA from proceeding with the settlement was "necessary from the standpoint of the proper administration of justice." *Id.* at 1343 ("This injunction should not be interpreted as any indication of whether the settlement is indeed a fair one, but simply as to which judge has been vested with the authority to render that decision.").

The *In re Managed Care* decision, then, is persuasive to this court because that decision concerned not only the particular authority and role of an MDL court but also the defendant's responsibility for creating the situation at hand. Like CIGNA, the Bank has violated Rule 7.5(e) by failing to disclose to the JPML the existence of the *Lopez* action. That rule requires the Bank to notify the Clerk of the Panel of "any potential tag-along actions." In defending its unilateral decision that *Lopez* does not constitute a "tag-along" action, the Bank points to Rule 1.1, which defines a "tag-along" action as one involving "common questions of fact with actions previously transferred under Section 1407." According to the Bank, Rule 1.1 places the burden

16

on the Bank to determine, in its own judgment, what cases are, in fact, "tag-along actions." The Bank, then, allegedly determined that *Lopez* did not share common questions of fact with the MDL consolidated cases because, despite what the pleadings in *Lopez* reflected at the time, the Bank contends that *Lopez* concerned only stand-alone section 226(a) claims (claims that, according to the Bank, are not alleged in plaintiffs' consolidated complaint). The court disagrees. While Rule 1.1 defines a tag-along action, Rule 7.5(e) requires disclosure of any "potential" tag-along action. Under any reasonable view of *Lopez* as compared to the cases consolidated in these proceedings, *Lopez* is a "potential" tag-along action. At the time *Lopez* was removed to federal court, it contained meal and rest period claims and inaccurate wage statement claims under California state law and, in its removal papers, the Bank advised the federal district court in California that *Lopez* "overlaps" with several cases consolidated in this MDL. Even the Bank's counsel, at oral argument, conceded that whether *Lopez* is, in fact, a tag-along action presents a "close question." At a minimum, then, *Lopez* is a "potential" tag-along action that was required to be disclosed to the JPML.[8] Moreover, even assuming that *Lopez* today contains only stand-alone 226(a) claims, it remains a "potential" tag-along action because plaintiffs' consolidated complaint in these proceedings contains stand-alone section 226(a) claims.

---

[8]Whether the Panel would have consolidated (or will consolidate) *Lopez* with these proceedings in light of the advanced stage of that case is uncertain and, at this juncture, irrelevant. Regardless of the Panel's decision on whether to transfer *Lopez*, the MDL process itself–a process initiated by the Bank–mandates that the Panel be permitted to make that decision.

Even after the Bank failed to disclose Lopez to the JPML, this court continued to remind the Bank of its duty to disclose related cases. The court's Preliminary Practice and Procedure Order, issued in late April 2010, specifically directed the parties to identify "all related cases pending in state or federal court, together with their current status, including any discovery taken to date." At that time, *Lopez* had been removed to federal court and still contained meal and rest period claims and inaccurate wage statement claims under California state law. Identical claims were alleged in several cases consolidated in these proceedings. The Bank, however, did not identify *Lopez* as a related case.[9]

The court's Practice and Procedure Order No. 2, issued on May 14, 2010, further directed the parties that any discussions of a settlement "that would affect any claims brought in this litigation" must be conducted by plaintiffs' lead counsel and that any settlement resolving any portion of the claims brought in this case must be approved by this court. The Bank contends that this language clearly only applies to settlement negotiations in this proceeding (as opposed to negotiations in a case outside the context of the MDL). While it may be that the court intended that language to apply only to settlement negotiations in the context of this case, the court certainly did not anticipate a situation (because it had not been advised that an overlapping case existed that was not part of the MDL) where the Bank would be settling claims at issue in this case in another setting. Of course, had *Lopez* been disclosed to

---

[9]While the Bank complains that the court's order did not define the term "related," there should be no doubt by this time that the court believes that any reasonable interpretation of that term would have included the *Lopez* case.

18

the JPML and yet not transferred to this MDL, then the court's order could have been crafted with an eye toward the *Lopez* case. But in the absence of such knowledge at the time the order was drafted, the court's language is left broad enough to encompass settlement negotiations involving a case pending in another court so long as the settlement "would affect any claims brought in this litigation." Even the Bank concedes that the *Lopez* release, as presently drafted, affects claims brought in this litigation. Yet the Bank did not notify plaintiffs' counsel of the *Lopez* settlement negotiations and certainly did not seek this court's approval of the settlement agreement.

For the foregoing reasons, the court is convinced that it is authorized under the particular circumstances presented here to enjoin the Bank from proceeding with the *Lopez* settlement (and, more specifically, from issuing the Notice of Proposed Class Action Settlement to the *Lopez* class members) until it has disclosed *Lopez* to the JPML and allowed the JPML to decide whether to consolidate *Lopez* with these proceedings. To the extent the prerequisites of Rule 65 of the Federal Rules of Civil Procedure must also be met before the court can issue an injunction under the All Writs Act,[10] the court finds that those prerequisites are satisfied and

---

[10]Defendant contends that the Rule 65 prerequisites must be met under the All Writs Act. Certainly, there is persuasive authority that the prerequisites need not be satisfied. *See In re Baldwin-United Corp.*, 770 F.2d 328, 338-39 (2d Cir. 1985) (Rule 65 does not apply to injunctions issued under the All Writs Act). In any event, the court declines to decide this issue because, assuming they do apply in this context, plaintiffs have satisfied the prerequisites here.

that a discussion of those prerequisites is useful in crafting a narrowly tailored injunction in this case.[11]

To begin, the Bank asserts that no irreparable harm exists because plaintiffs have an adequate remedy at law. *See Grider*, 500 F.3d at 332 ("[A] court may not issue an injunction under the All Writs Act if adequate remedies at law are available."). According to the Bank, common class members may either opt-out of the *Lopez* settlement or raise an objection at the fairness hearing held by the *Lopez* court in connection with the final approval of settlement in that case. But the court is persuaded that plaintiffs will suffer irreparable harm in the absence of an injunction as soon as the notice of the proposed settlement in *Lopez* is issued–before the opportunity even arises to opt-out of the settlement or raise an objection to the settlement. The proposed notice is scheduled to be sent to approximately 53,000 class members and the notice is likely to be confusing to most lay people on the issue of the extent to which *Lopez* overlaps with this MDL. At a minimum, issuing the notice in *Lopez*–in the absence of a determination by the JPML of whether *Lopez* should be transferred here–could deter participation in this MDL because putative class members, upon receiving notice in this case, may believe that their claims were resolved by the *Lopez* settlement and elect not to participate in these proceedings. Moreover, plaintiffs have shown irreparable harm by virtue of the fact that the *Lopez* settlement will establish a lower baseline for future settlement negotiations in this case with respect to the

---

[11]The likelihood-of-success-on-the-merits factor does not seem to fit the context of the requested injunction and, in any event, the Bank does not suggest that plaintiffs have not satisfied this factor so the court need not address it.

section 226(a) claims and, in all likelihood, will decrease the settlement value of the remaining claims by peeling away potentially meritorious claims.

In a related vein, the Bank contends that plaintiffs cannot show irreparable harm or prejudice because the release in *Lopez* can be limited to stand-alone section 226(a) claims while preserving the ability of class members to pursue any derivative section 226(a) claims within the statute of limitations period applicable to the MDL. The Bank's argument, of course, is premised on its assumption that plaintiffs' consolidated complaint does not assert stand-alone section 226(a) claims. Even granting the Bank that assumption, the Bank's proposed "carve out" is unworkable. As the court discussed with the parties at oral argument, the difficulty in the Bank's proposed carve-out is most evident when attempting to attribute damages at a future trial of the derivative section 226(a) claims. Assume, for example, that a particular plaintiff falls within both the *Lopez* class and an MDL class and that this plaintiff alleges that he or she was required to work "off the clock" and, as a result, did not receive all compensation owed to him or her and that, in addition, his or her wage statements did not identify the total hours worked per pay period. For a single wage statement, then, that plaintiff would have both a derivative section 226(a) claim (on the basis that his or her wage statement was inaccurate because it failed to reflect all hours worked by that plaintiff) and a stand-alone section 226(a) claim (on the basis that his or her wage statement did not identify the total hours worked per pay period). While the Bank contends that damages relating to section 226(a) claims are typically limited to statutory penalties of $4000 per wage statement, the Bank conceded that it was "not

21

clear" whether that plaintiff, having settled his or her stand-alone claim in *Lopez*, would be entitled to recover penalties for the same wage statement based on the derivative violation. Even in the absence of difficult issues concerning collateral estoppel, the Bank indicated at oral argument that, at a minimum, it would assert an offset defense in that situation. For these reasons, any proposed "carve-out" by the Bank does not alleviate the harm suffered by plaintiffs if the settlement is permitted to go forward without input from the JPML.

Finally, the court is sensitive not only to the strong public interest favoring settlements generally, but also to the interests of the class members in *Lopez* who will experience some delay in the receipt of their settlement funds.[12] Assuming the Bank is correct, however, that *Lopez* should not be transferred to this MDL, then the court believes that it has narrowly tailored an injunction here that will minimize any delay suffered by the *Lopez* plaintiffs. In that regard, the Bank indicated at oral argument that it did not anticipate issuing a Notice of Class Action Settlement in *Lopez* until October 2010 or November 2010,[13] and did not anticipate a final settlement hearing in *Lopez* until April 2011. In the court's experience, it would expect that the JPML will issue a decision on the *Lopez* case in a matter of months and, to expedite that

---

[12]At oral argument, the parties agreed that it was likely that the Bank might be able to proceed with the *Lopez* settlement for those class members who do not fall within any class definition in this MDL. That approach, if possible, would obviously mitigate any potential hardship to the *Lopez* class.

[13]Moreover, the Bank acknowledged at oral argument that the Notice as presently drafted would need to be modified, at a minimum, to correct "facial problems" relating to this MDL. Thus, it is likely that the Notice would not issue in any event until at least November 2010 if not later.

process, the court will send a copy of this order to the JPML via electronic mail.  Thus, again assuming that the Bank is correct that the JPML will decline to add the *Lopez* case as a tag-along action, then the *Lopez* settlement, in all likelihood, will be back on track not far behind where it presently stands.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' emergency motion to enjoin defendants (doc. 71) is granted to the extent that the court will enjoin the Bank from issuing the Notice of Proposed Class Action Settlement to the *Lopez* class members until it has disclosed *Lopez* to the JPML and allowed the JPML to determine in the first instance whether *Lopez* should be transferred to this District for consolidation with the cases pending here.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court shall send a copy of this order to the Judicial Panel on Multidistrict Litigation via electronic mail.

**IT IS SO ORDERED** this 10th day of September, 2010.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge