# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE: BANK OF AMERICA
WAGE AND HOUR EMPLOYMENT
LITIGATION                                          No.  10-MD-2138-JWL

**This Order Relates to All Cases**
_____

## MEMORANDUM & ORDER

This multidistrict litigation proceeding consolidates numerous putative collective and

class actions against Bank of America, N.A. and Bank of America Corporation ("the Bank")

on behalf of current and former non-exempt retail branch and call center employees alleging

violations of both federal and state wage and hour laws.  This matter is presently before the

court on the Bank's motion to dismiss plaintiffs' consolidated complaint pursuant to Rule

12(b)(6) (doc. 60) and the Bank's alternative motion to strike Counts VII and XV of plaintiffs'

consolidated complaint (doc. 61).  As will be explained, the motion to dismiss is denied in its

entirety and the motion to strike is denied in part and granted in part.


## I.      Background

In this multidistrict litigation, twelve named plaintiffs have filed a consolidated

complaint against defendants Bank of America , N.A. and Bank of America Corporation (the

Bank) alleging that the Bank deliberately failed to pay its retail branch and call center

employees their earned wages and overtime compensation in violation of the Fair Labor Standards Act (FLSA) and various state laws of California and Washington.

With respect to retail branch employees, the consolidated complaint alleges that the Bank classifies such employees as non-exempt and entitled to overtime. These employees are responsible for assisting customers with their banking needs, including opening and closing the bank branch; counting money; maintaining the cashier's drawer; performing bank transactions; offering and selling financial products and services; and taking loan applications. According to the complaint, retail branch employees were and are required to perform pre- and post-shift work (and work during state-mandated meal and rest periods) without compensation due to "understaffing and/or unrealistic sales quotas" and in order to complete their regularly assigned job duties. The named plaintiffs further allege that all retail branch employees share common job duties such that all were subject to the Bank's requirement that such employees perform pre- and post-shift work without compensation and that such employees perform work during state-mandated meal and rest periods. According to the complaint, branch managers "were under instructions and significant pressure from [the Bank] to restrict the amount of overtime to be paid . . . and were only allowed a finite number of hours or amount of money that could be paid to non-exempt employees." The complaint alleges that the Bank implemented this policy in a variety of ways, including refusing to allow employees to record all hours worked, modifying employees' recorded hours on the Bank's "eWorkplace" timekeeping system and providing "comp time" in lieu of paying overtime compensation.

2

With respect to call center employees, the complaint alleges that the Bank classifies such employees as non-exempt and entitled to overtime. Call center employees place calls to and receive calls from existing Bank customers in order to provide customer service, including activating and updating accounts; assisting with billing inquiries; resolving billing, credit and collections issues; and selling Bank products and services such as mortgage loan products, credit cards and/or borrower protection plans. According to the complaint, call center employees are routinely required to perform a number of pre-shift tasks for which they are not compensated, including finding a computer; retrieving headsets and other "necessary equipment" from their lockers; logging into the computer and network; opening relevant computer programs and software applications; reviewing memoranda and e-mail; and completing other tasks essential to the performance of their jobs. Moreover, plaintiffs allege that the Bank does not compensate call center employees for certain post-shift tasks, such as shutting down relevant computer programs and software applications; logging off the computer and network; cleaning up the employee's workstation; returning equipment to the employee's locker; and completing other essential tasks.

Finally, the complaint contains allegations concerning the "eWorkplace" timekeeping system. According to the complaint, all retail branch and call center employees are required to record their hours worked on this centralized timekeeping system–a system that automatically populates all overtime eligible employees' timesheets with their scheduled hours if an employee does not enter his or her time worked for a particular work week. The complaint alleges that because employees were instructed not to record overtime, employees often did not change their

3

pre-populated timecards in eWorkplace when they worked more than forty hours in a given week. Any modification from the pre-populated timesheet had to be approved by a manager and, if time was recorded in addition to the pre-populated scheduled hours for that particular employee, the Bank encouraged branch managers to modify or decrease the hours to deny the payment of overtime wages. The complaint further alleges that the Bank encouraged managers to instruct branch and call center employees to modify their own recorded time to eliminate overtime hours.

Based on the foregoing allegations, the named plaintiffs have alleged 15 counts in their consolidated complaint. Specifically, in Count I of the consolidated complaint, the named plaintiffs seek to represent a nationwide collective action class of non-exempt retail branch and call center employees for alleged violations of the overtime provisions of the FLSA. In Counts II through VI and Count IX, the California retail branch and call center representatives seek to represent a Rule 23 class of non-exempt California retail branch and call center employees for alleged violations of the California Labor Code, including failure to pay straight and overtime wages; failure to pay all wages due and owing at the time of termination; failure to provide accurate wage statements; failure to pay for missed meal and rest periods; and failure to provide vacation pay. In Counts VII and VIII, the California representatives seek to represent the same California class for alleged violations of the California Business and Professions Code–claims which are predicated solely on the alleged violations of the FLSA and the California Labor Code. Finally, the Washington retail branch representatives, in Counts X through XIV, seek to represent a Rule 23 class of non-exempt Washington retail branch employees for alleged

4

violations of the Revised Code of Washington and the Washington Administrative Code, including failure to pay minimum wage and overtime compensation; failure to pay for missed meal and rest periods; failure to provide accurate pay information; and failure to provide all wages due and owing at the time of termination. In Count XV, the Washington representatives seek to represent the same Washington class for alleged violations of the Washington Consumer Protection Act–a claim which is predicated solely on the alleged violations of Washington wage and hours laws.

## II.    Pleading Requirements of Rule 8

The Bank moves to dismiss each of the 15 counts alleged in plaintiffs' consolidated complaint on the grounds that the complaint fails to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure as articulated by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, ___ U.S.___, 129 S. Ct. 1937 (2009).[1]  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

---

[1]With respect to the derivative counts asserted in the consolidated complaint (Counts VII, VIII and XV), the Bank asserts only that these claims must be dismissed because the predicate claims are subject to dismissal under the Bank's motion. Because the court declines to dismiss the predicate claims, the derivative claims, in the absence of any other argument from the Bank, survive as well.

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

In analyzing the Bank's Rule 12(b)(6) motion, the court reviews plaintiffs' consolidated complaint "for plausibility," *see U.S. ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163, 1167 (10th Cir. 2010), focusing on whether the well-pleaded allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. Dismissal is not appropriate where the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content, as opposed to legal conclusions, that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949.

The Bank asserts that plaintiffs' FLSA claim must be dismissed under *Iqbal* and *Twombly* because plaintiffs' complaint simply parrots the statutory language of the FLSA and contains nothing more than conclusory allegations. Relying on this court's opinion in *Wass v. NPC Int'l, Inc*., 688 F. Supp. 2d 1282 (D. Kan. 2010), the Bank contends that plaintiffs' complaint fatally omits facts showing, *inter alia*, the named plaintiffs' respective hourly rates of pay; "when, how often, how much and/or at whose direction" each named plaintiff allegedly worked without receiving compensation; and "when, how often, how much and/or at whose direction" each named plaintiff allegedly worked and had the recorded hours eliminated or

6

failed to properly record the hours worked.  Plaintiffs, in turn, distinguish the claims asserted in this case from those asserted in *Wass* and direct the court instead to this court's opinion in *McDonald v. Kellogg Co.*, 2009 WL 1125830 (D. Kan. Apr. 27, 2009).

In *Wass*, the plaintiffs, current and former pizza delivery drivers employed by the defendant, asserted collective action and class claims based on allegations that the defendant failed to reimburse its drivers sufficiently for vehicle-related and other expenses and that such failure resulted in the defendant paying its drivers less than the applicable minimum wage.  688 F. Supp. 2d at 1283.  The defendant filed a motion to dismiss under *Twombly* on the grounds that the plaintiffs failed to plead the specific amounts of their wages, their reimbursements and their expenses and that, in the absence of such allegations, the complaint did not state a plausible claim for relief.  *Id*.  The court granted the motion, concluding that *Twombly* required the plaintiffs to allege more specific facts concerning their minimum wage claims.  *Id*.

In doing so, the court emphasized that the "defendant would not be in violation of the minimum wage laws merely by failing to reimburse plaintiffs for expenses; rather, such failure must be in an amount great enough to bring plaintiffs' wages for a particular time period below the legal minimums."  *Id*. at 1288.  In the absence of any allegations concerning the plaintiffs' wage rates, however, the court could not reasonably infer that the defendant was liable under the FLSA for failing to pay the minimum wage because there were no facts from which the court could infer that the deficiency in reimbursements brought the plaintiffs' wages below the legal minimum.  *Id*.  In that regard, the court highlighted that the plaintiffs had alleged only that they earned "approximately the applicable federal or state minimum wage."  *Id*.  Assuming that

a plaintiff earned the higher state-mandated minimum wage under Colorado law, the complaint did not state a plausible claim for an FLSA minimum-wage violation (in the absence of facts concerning the particular wage rate or amount of reimbursements) because the allegedly insufficient reimbursements would not necessarily bring that plaintiff under the federal minimum wage. *Id.* The court therefore concluded that the case "demands a greater degree of specificity in pleading" than a "straightforward" FLSA claim for overtime compensation such as the court's prior decision in *McDonald v. Kellogg Company*. *Id.*

In *McDonald*, the court rejected a *Twombly* challenge to a complaint setting forth a "straightforward" FLSA claim and concluded that *Twombly* did not increase a plaintiff's burden in the context of pleading such a claim. 2009 WL 1125830, at *1-2 (collecting numerous post-*Twombly* cases supporting that conclusion). Significantly, the plaintiffs in *McDonald* alleged only that the defendant's "practice and policy" was to willfully fail to pay overtime due and owing to the plaintiffs. *See id.* at *2. The *McDonald* plaintiffs did not allege the specific pay practice or policy (*e.g.*, refusing to compensate for pre- or post-shift work) that allegedly caused the overtime violation. Nonetheless, this court expressed its belief in *McDonald* that the Tenth Circuit, if faced with the issue, would conclude that the plaintiffs' complaint contained sufficient allegations of fact to state a claim for relief that was plausible on its face. *Id.* at *2.

The Bank suggests that this case is more akin to *Wass* than *McDonald* because it is, like *Wass*, "decidedly more complex" than *McDonald* such that the court should require a greater degree of specificity, including the type of allegations described by the Bank in its motion. The court disagrees. *Wass*, of course, did not involve any overtime claims and the particular nature

of the plaintiffs' theory in that case–that the plaintiffs' wage rates were reduced by some amount below the minimum wage level because some amount of expenses were not sufficiently reimbursed–necessarily required more detail in the complaint to satisfy *Twombly*'s plausibility requirement. In the context of an alleged overtime violation, that violation is plausible regardless of what any particular plaintiff earned as an hourly wage (and regardless of when, how often and how much a particular plaintiff was required to work in excess of 40 hours per week without compensation) so long as the plaintiff was otherwise eligible to receive overtime compensation and worked more than 40 hours in a given week without receiving compensation for those overtime hours. Indeed, numerous courts continue to find that dismissal of FLSA claims is not appropriate when the complaint alleges only that non-exempt employees regularly worked more than 40 hours per workweek and that they were not paid time-and-a-half for those overtime hours. *See Hawkins v. Proctor Auto Serv. Center, LLC*, 2010 WL 1346416, at *1 (D. Md. Mar. 30, 2010) (where plaintiff alleged that he worked more than 40 hours per week without overtime compensation, allegations clearly satisfied *Iqbal*); *Hoffman v. Cemex, Inc*., 2009 WL 4825224, at *3-4 (S.D. Tex. Dec. 8, 2009) (refusing to dismiss FLSA claim under *Iqbal* despite lack of "detailed factual allegations" where plaintiffs alleged that they were classified as non-exempt, that they regularly worked more than 40 hours per week and were not paid overtime rates); *Haskins v. VIP Wireless Consulting*, 2009 WL 4639070, at *7 (W.D. Pa. Dec. 7, 2009) (applying *Iqbal*, dismissal of complaint inappropriate where plaintiff alleged that he worked more than 40 hours per workweek and did not receive overtime compensation);

*Connolly v. Smugglers' Notch Management Co.*, 2009 WL 3734123, at *23 (D. Vt. Nov. 5, 2009); *Acho v. Cort*, 2009 WL 3562472, at *2-3 (N.D. Cal. Oct. 27, 2009).

In any event, the allegations contained in plaintiffs' consolidated complaint, while not as detailed as the Bank would require, are much more detailed than the complaint in McDonald. To the extent, then, that the Bank contends that this case is far more complex than McDonald, any increase in complexity is certainly matched by the increase in the level of detail in the consolidated complaint. Where the plaintiffs in *McDonald* alleged only a failure to pay overtime for hours worked in excess of 40 hours in a given week, the complaint here details numerous alleged ways in which the Bank routinely denied overtime compensation to its retail branch and call center employees and details the nature of the work that employees were allegedly required to perform off-the-clock. To be sure, the factual content of the consolidated complaint permits an inference that the Bank violated the overtime provisions of the FLSA.[2]

The Bank's argument with respect to plaintiffs' California and Washington state law claims mirrors its FLSA argument and fails for the same reasons. The court has uncovered no cases suggesting that the level of detail in plaintiffs' consolidated complaint concerning their

---

[2]In its reply brief, the Bank contends for the first time that plaintiffs' consolidated complaint is factually deficient because it fails to allege that any named plaintiff ever actually worked off-the-clock, worked overtime without compensation, had his or her timesheets modified or failed to record his or her hours worked. This argument is an exercise in semantics. With respect to the named plaintiffs who are former or current retail branch employees, the complaint alleges that "all" retail branch employees were subject to the Bank's alleged overtime violations. With respect to the named plaintiffs who are former or current call center employees, the nature of the alleged pre- and post-shift work performed by call center employees, coupled with the fact that such employees are performed on a "shift time" basis, clearly supports an inference that all call center employees were subject to the Bank's alleged overtime violations.

California and Washington state law claims (claims that rely on the same allegations underlying plaintiffs' FLSA claims) is insufficient under *Twombly*/*Iqbal*. Indeed, the cases relied upon by plaintiffs and uncovered by the court persuade the court that plaintiffs' state law claims are sufficient. *See Washington v. Crab Addison, Inc*., 2010 WL 2528963, at *3 (N.D. Cal. June 18, 2010 (wage and hour claims asserted under California Labor Code satisfied Iqbal despite the fact that "skeletal" complaint alleged only that defendant routinely denied him appropriate breaks and overtime compensation); *Flores v. EI Maintenance Co.*, 2010 WL 1010013, at *1-2 (N.D. Cal. Mar. 18, 2010) (California UCL claim based on purported wage and hour violations sufficient to survive motion to dismiss where plaintiffs simply averred that the defendant failed to compensate them for overtime hours).

## III.     Plaintiffs' California UCL Claims

In Count VII of plaintiffs' consolidated complaint, the California Retail Branch and Call Center Class Representatives assert class claims under California's Unfair Competition Law (UCL). *See* Cal. Bus. & Prof. Code § 17200. The California UCL permits recovery for "any unlawful, unfair or fraudulent business act or practice." *Id*. A claim based on the UCL "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200." *Wang v. Chinese Daily News, Inc*., ___ F.3d ___, 2010 WL 3733568, at *11 (9th Cir. Sept. 27, 2010). Plaintiffs' UCL claims here "borrow" the FLSA and certain provisions of the California Labor Code as the substantive violations. The Bank moves to strike plaintiffs' UCL claims to the

extent those claims rely on the FLSA as the substantive violation on the grounds that the FLSA preempts those claims. The Bank moves to strike plaintiffs' UCL claims to the extent those claims rely on certain provisions of the California Labor Code on the grounds that those claims improperly seek remedies not recoverable under the UCL.[3]

*A. Preemption*

Relying primarily on the Fourth Circuit's decision in *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), the Bank contends that the FLSA provides exclusive remedies for its violation and that state law claims grounded in FLSA violations are thus preempted. Plaintiffs, in turn, direct the court to numerous federal district courts in California that have found that California UCL claims are not preempted by the FLSA. *See, e.g.*, *Bahramipour v. Citigroup Global Mkts., Inc.*, 2006 WL 449132 (N.D. Cal. Feb. 22, 2006); *Barnett v. Wash. Mut. Bank, FA*, 2004 WL 2011462, at *4-7 (N.D. Cal. Sept. 9, 2004). According to the Bank, plaintiffs' cases are both non-binding and unsound.

In *Anderson*, the Fourth Circuit analyzed whether the plaintiffs' state law claims were precluded under "conflict preemption" principles. 508 F.3d at 191. Conflict preemption occurs when a state law "actually conflicts with federal law." *Id*. (citations and quotations omitted). One way in which a state law is deemed to conflict with federal law is when the "state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law."

---

[3]The more appropriate procedural vehicle for the Bank's arguments concerning Counts VII and XV would have been a Rule 12(b)(6) motion and the court analyzes the motion to strike through the lens of the Rule 12(b)(6) standard.

*Id.* at 191-92. Emphasizing the FLSA's "unusually elaborate enforcement scheme" and the fact that the FLSA does not explicitly authorize states to create alternative remedies for FLSA violations, the Fourth Circuit ultimately concluded that the FLSA provides exclusive remedies for the enforcement of its own provisions such that the plaintiffs' state law claims were precluded under obstacle preemption. *Id.* at 192-94. Significantly, the Fourth Circuit in *Anderson* stated that its conclusion that "Congress prescribed exclusive remedies in the FLSA for violations of its mandates" was compelled by its prior opinion in *Kendall v. City of Chesapeake*, 174 F.3d 437 (4th Cir. 1999), a case in which the Fourth Circuit held that the plaintiffs in that case could not use 42 U.S.C. § 1983 to enforce their rights to overtime compensation under the FLSA. *See id.* at 194.

In addition to the *Anderson* decision, the Bank also relies on the Ninth Circuit's decision in *Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000), to support its argument that plaintiffs' UCL claims are precluded by the FLSA under "obstacle preemption" principles. In *Williamson*, the Ninth Circuit held that a common law fraud claim which addressed conduct not within the scope of the FLSA was not preempted by the FLSA. In doing so, the Circuit, in dicta, stated that "claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." *Id.* at 1154. However, since the parties filed their submissions, the Ninth Circuit has issued its opinion in *Wang v. Chinese Daily News, Inc.*, ___ F.3d ___, 2010 WL 3733568 (9th Cir. Sept. 27, 2010). In that decision, the Ninth Circuit not only clarified its decision in *Williamson* but expressly concluded

that the FLSA does not preempt a state-law UCL claim that "borrows" its substantive standard from the FLSA. Id. at *12-13.

In *Wang*, the defendant-newspaper urged to the district court that a California UCL claim alleging violations of the FLSA was preempted by the FLSA. *Id.* at *11. The district court rejected that argument. *Id.* The newspaper appealed that decision to the Ninth Circuit and the Circuit affirmed the district court. *Id.* at *12. In doing so, the Circuit first acknowledged that *Williamson* contained "somewhat contradictory statements":

> On the one hand, we suggested in dicta that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." On the other hand, we rejected as "incorrect" the district court's assumption that "FLSA is the exclusive remedy for claims duplicated by or equivalent of rights covered by the FLSA."

*Id.* at *12 (quoting *Williamson*, 208 F.3d at 1152, 1154. The Circuit then noted that federal district courts in California–including those cited by plaintiffs here–had applied *Williamson* to conclude that UCL claims are not preempted by the FLSA. *Id.*

Turning to the precise issue of whether conflict preemption precluded the plaintiffs' UCL claims, the Ninth Circuit reasoned that it was "obviously possible to comply with both laws simultaneously" because the state and federal requirements are the same. *Id.* at *13. The Circuit further rejected the notion that the state law served as an obstacle to the "accomplishment and execution of the full purposes and objectives of Congress." *Id.* According to the Circuit, the "central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees," and that purpose would be furthered by permitting the state law claim to proceed. *Id.*

14

The Ninth Circuit in *Wang* also rejected as "unpersuasive" the Fourth Circuit's decision in *Anderson*. Specifically, the *Wang* court criticized the *Anderson* court's reliance on the *Kendall* decision on the grounds that "*Kendall* is not a case about federal preemption of state law; rather, it is about whether another federal statute . . . can support a claim that clearly falls under the FLSA." *Id.* (quoting *Williamson*, 208 F.3d at 1153). Reiterating its prior conclusion in *Williamson* that *Kendall* is "irrelevant" to a preemption analysis, the Ninth Circuit explained that the issue of whether Congress intended a general federal remedial statute to apply to FLSA claims even though the FLSA has its own remedial scheme is entirely "distinct from the issue whether independent state law claims parallel to FLSA claims are preempted." *Id.* Ultimately, then, the Ninth Circuit concluded that the FLSA does not preempt a California UCL claim that borrows its substantive violation from the FLSA. *Id.*

In light of *Wang*, of course, the Bank's reliance on *Williamson* is no longer tenable. Moreover, the court agrees with the Ninth Circuit that the Fourth Circuit's reliance on its *Kendall* decision as the foundation for its decision in *Anderson* renders the *Anderson* opinion unpersuasive. Because the Bank advocates preemption, it bears the burden of showing, under its specific theory of preemption, that the California UCL law somehow interferes with Congress's purpose in enacting the FLSA. *See Cook v. Rockwell Int'l Corp.*, ___ F.3d ___, 2010 WL 3449065, at *11 (10th Cir. Sept. 3, 2010) (party advocating conflict preemption bears burden of showing conflict). Congress's declared purpose in enacting the FLSA was to improve "labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers." *Clements v. Serco,*

*Inc.*, 530 F.3d 1224, 1226 (10th Cir. 2008) (quoting 29 U.S.C. § 202(a)). The Bank offers no reason why permitting the UCL claims to go forward would impede or thwart this purpose other than its generic argument that the FLSA provides exclusive remedies for a violation of its provisions–a conclusion that the Tenth Circuit has never drawn. Ultimately, then, the court finds the *Wang* decision persuasive and concludes that the FLSA does not preempt a California UCL claim that is predicated on the FLSA. The court denies the Bank's motion on this issue.


B.    *Wages or Penalties?*

The Bank moves to strike plaintiffs' UCL claims to the extent those claims are based on violations of the California Labor Code on the grounds that plaintiffs seek remedies that are not recoverable under the UCL. To begin, the parties here agree that the remedies available under the UCL are limited to injunctive relief and restitution. *Walker v. Geico General Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009) (citing *Buckland v. Threshold Enters. Ltd.*, 66 Cal. Rptr. 3d 543, 557 (2007)). They further agree that "unpaid wages" constitute restitution within the meaning of the UCL and are therefore recoverable under the UCL. *See Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 714 (Cal. 2000). In their consolidated complaint, plaintiffs seek "restitution" under California's UCL for the Bank's alleged failure to provide and pay for meal and rest periods (section 226.7 payments); for the Bank's alleged failure to pay all wages due upon discharge or termination (section 203 payments); and for the Bank's alleged failure to provide accurate itemized wage statements (section 226 payments). According to the Bank,

plaintiffs' claims for "restitution" are, in fact, non-recoverable claims for damages and penalties.

1.      Section 226.7 Payments

Plaintiffs' UCL claims are based in part on the Bank's alleged failure to provide mandatory meal and rest periods or to pay its employees for missed meal and rest periods. Pursuant to California Labor Code § 226.7, if an employer "fails to provide an employee a meal or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." For purposes of plaintiffs' UCL claims, the Bank maintains that section 226.7 payments are in the nature of a penalty and are not recoverable under the UCL. Plaintiffs, on the other hand, contend that section 226.7 payments are akin to overtime wages that are recoverable under the UCL.

The court's analysis of this issue necessarily begins with the California Supreme Court's decision in *Murphy v. Kenneth Cole Productions, Inc*., 155 P.3d 284 (Cal. 2007). In *Murphy*, the court addressed whether section 226.7 payments constituted a penalty or a wage for purposes of determining whether plaintiffs' claims were timely filed because a different statute of limitations applied depending on whether the remedy sought was a penalty or a wage. *Id.* at 287. The California Supreme Court determined that the additional hour of compensation for a missed meal or rest period was more akin to a wage than a penalty. *Id*. at 297. In so concluding, the court carefully analyzed in great detail not only the statutory language but also

17

the legislative and administrative history of the remedy for missed meal and rest periods and the compensatory purpose of the remedy. *Id*. at 289-97.

The Bank argues that *Murphy* is limited to the statute of limitations context. To be sure, the *Murphy* opinion did not address whether section 226.7 payments were recoverable under the UCL. Nonetheless, the California Supreme Court's detailed analysis in *Murphy*, at a minimum, strongly suggests to this court that, if faced with the issue, the California Supreme Court would conclude that section 226.7 payments constitute premium wages that are recoverable under the UCL. Nothing in the *Murphy* opinion evidences an intent or effort by the court to limit its analysis to the statute of limitations context. Indeed, since the *Murphy* opinion, every court that has addressed the issue has held that section 226.7 payments constitute wages that are recoverable under the UCL. *See Lopez v. United Parcel Serv., Inc*., 2010 WL 728205, at \*10 (N.D. Cal. Mar. 1, 2010) (relying on *Murphy* in holding that payments for missed meal and rest periods recoverable under UCL); *Valenzuela v. Giumarra Vineyards Corp*., 614 F. Supp. 2d 1089 (E.D. Cal. 2009) ("[P]ayments under Section 226.7 are restitutionary because they are akin to payment of overtime wages to an employee: both are 'earned wages' and thus recoverable under the UCL.") (quoting *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896 (C.D. Cal. 2005)); *Doe v. D.M. Camp & Sons*, 2009 WL 921442, at \*13 (E.D. Cal. Mar. 31, 2009) (same); *Swanson v. USProtect Corp*., 2007 WL 1394485, at \*2, 5 (N.D. Cal. May 10, 2007) (predicting in light of *Murphy* that the California Supreme Court would extend analysis to UCL context); *see also Kamar v. RadioShack Corp*., 2008 WL 2229166, at \*15

(C.D. Cal. May 15, 2008) (suggesting in dicta that rest or meal period premiums recoverable under UCL after *Murphy*).

Because the court is convinced that the California Supreme Court, in light of its decision in *Murphy*, would conclude that section 226.7 payments constitute earned wages that are recoverable under the UCL, the court denies the Bank's motion to strike this portion of plaintiffs' UCL claims.

2.      Section 203 Payments

California law provides that an employee's wages earned and unpaid at the time of the employee's discharge or resignation with proper notice are due and payable immediately. Cal. Labor Code §§ 201, 202. Where an employer "willfully fails" to timely pay such wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to thirty days." *Id.* §203. The parties dispute whether section 203 payments constitute penalties, as urged by the Bank, or wages, as urged by plaintiffs. The weight of authority appears to tip in favor of the Bank on this issue. *See, e.g., Pineda v. Bank of America, N.A.*, 87 Cal. Rptr. 3d 864, 867 (Cal. Ct. App. 2009) (continuation wages made payable by section 203 are a penalty rather than wages and cannot be recovered as restitution under the UCL); *Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 968 (C.D. Cal. 2006) ("[I]t is clear that § 203 payments cannot be classified as restitution."); *Tomlinson v. Indymac Bank*, 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005) (same).

19

As plaintiffs highlight, however, the California Supreme Court in *Pineda* has granted a petition for review with respect to this very issue–whether an employee can recover section 203 payments as restitution under the UCL? *See Pineda v. Bank of America, N.A.*, 207 P.3d 1 (Cal. 2009). Plaintiffs suggest that the court deny without prejudice the Bank's motion on this issue pending resolution of the issue by the California Supreme Court in *Pineda*. While the Bank would prefer the court to rule in its favor on the merits without delay, the Bank does not oppose the approach suggested by plaintiffs and certainly does not indicate that it will be prejudiced in any way by the court's decision to permit the California Supreme Court in the first instance to resolve this issue. Accordingly, the court will deny the Bank's motion on this issue without prejudice to refiling their motion after the California Supreme Court in *Pineda* resolves the issue.

3.     Section 226(e) Payments

Finally, the Bank moves to strike that portion of plaintiffs' UCL claims that seek restitution for the Bank's alleged failure to provide accurate itemized wage statements. Section 226(a) of the California Labor Code requires employers to provide to covered employees "an accurate itemized statement in writing" showing, *inter alia*, gross wages earned; total hours worked; net wages earned; dates of the applicable pay period; and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Labor Code § 226(a). Under subsection (e) of the same provision, an employee "suffering injury as a result of a knowing and intentional failure by an employer

to comply with [section 226(a)] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)."

Defendant asserts that section 226(e)'s provision for "damages" and "penalties" clearly falls outside the ambit of available remedies under the UCL. The court agrees. Significantly, the California Supreme Court in *Murphy*, in connection with its analysis of whether section 226.7 payments constituted wages or penalties, compared the Legislature's decision not to label the section 226.7 payment a penalty while simultaneously establishing "penalties explicitly labeled as such" in other provisions of the same bill, including section 226, where the Legislature "imposed a penalty on employers who fail to provide itemized wage statements that comply with the Labor Code." 155 P.3d at 293; *see also Brewer v. Premier Golf Properties*, 86 Cal. Rptr. 3d 225, 232 (Cal. App. 2008) (section 226(e) provides for "penalties . . . that are punitive in nature"). California state cases, then, clearly suggest that section 226(e) payments are not recoverable under the UCL because those payments are punitive in nature. The only federal district court cases that speak to this precise issue are in accord. *See Campbell v. PricewaterhouseCoopers*, 2008 WL 3836972, at *6 (E.D. Cal. Aug. 14, 2008) (penalty provisions under section 226 not cognizable under the UCL); *In re Wal-Mart Stores, Inc. Wage & Hour Lit.*, 505 F. supp. 2d 609, 619 (N.D. Cal. 2007) (plaintiffs "correctly" conceded that their section 226 claims could not support a UCL claim); *Westerfield v. Washington Mut. Bank,* 2007 WL 2162989, at *5 (E.D.N.Y. July 26, 2007) (because plaintiffs sought only back wages

and injunctive relief under section 226, there was "no obstacle" to proceeding under the UCL).[4] Accordingly, the courts grants the Bank's motion to the extent that plaintiffs seek to recover section 226(e) penalties by means of the UCL. As noted by plaintiffs by way of a footnote in their submissions, however, to the extent plaintiffs seek injunctive relief under the UCL for section 226 violations, that portion of plaintiffs' consolidated complaint survives. *See Westerfield*, 2007 WL 2162989, at *5 (injunctive relief is available under 226(g) and is appropriate under the UCL).

## IV. Plaintiffs' Washington CPA Claims

In Count XV of plaintiffs' consolidated complaint, the Washington Retail Branch Class Representatives assert class claims under the Washington Consumer Protection Act (WCPA) based on the Bank's purported wage and hour violations. The Bank moves to strike these claims on the grounds that claims stemming from the employer-employee relationship (like those here) fall outside the ambit of the WCPA. The WCPA provides that "unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce" are

---

[4]Plaintiffs do not suggest in their submissions that they intend, in connection with their UCL claims, to seek lost wages as a measure of "actual damages" under section 226(e). The court, then, need not decide whether lost wages under section 226(e) would be recoverable under the UCL. *Compare Singer v. Becton, Dickinson & Co.*, 2008 WL 2899825, at *5 (S.D. Cal. July 25, 2008) (claims seeking lost wages for violations of section 226(a) do not constitute a penalty for statute of limitations purposes) *and Cornn v. United Parcel Serv., Inc.*, 2006 WL 449138, at *3 (N.D. Cal. Feb. 22, 2006) (same) *with In re RBC Dain Rauscher Overtime Lit.*, 703 F. Supp. 2d 910, 957 (D. Minn. 2010) (under California law, claims seeking lost wages for violations of section 226(a) are still deemed a penalty).

unlawful. RCW § 19.86.020. Under the WCPA, a plaintiff must establish (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (1986). A plaintiff may establish the first two elements by a showing that the alleged act constitutes a "per se" unfair trade practice. *Id*. at 535. A per se unfair trade practice exists "when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id*.

By way of example, the Washington Legislature has expressly declared that the violation of the Washington Law Against Discrimination (WLAD) constitutes an "unfair or deceptive act in trade or commerce" for purposes of the WCPA. RCW § 49.60.030(3). Specifically, the WLAD expressly provides that any practice "prohibited by this chapter which is committed in the course of trade or commerce" is an unfair or deceptive act in trade or commerce. *Id*. Expressly excluded from that provision, however, is "any unfair practice committed by an employer against an employee or a prospective employee." *Id*. Isolating that statutory exclusion, the Bank contends that the exclusion broadly applies to preclude employment disputes from serving as a predicate to a WCPA claim.[5]

_____

[5]The Ninth Circuit, albeit in an unpublished decision, has implicitly suggested that employment disputes are not automatically precluded from consideration under the WCPA. *See May v. Honeywell Int'l, Inc*., 331 Fed. Appx. 526, 529-30 (9th Cir. Aug. 17, 2009) (considering on the merits whether plaintiff had come forward with sufficient evidence that employer violated WCPA).

The court is not persuaded. The statutory exclusion plainly applies only to violations of the WLAD arising out of an employment relationship. In other words, WLAD violations premised on an employment relationship do not constitute "per se" violations of the WCPA. Plaintiffs' claims here arise under Washington's wage and hour laws–not its anti-discrimination laws. The legislature has not specifically exempted from the WCPA violations of the state's wage and hour laws. As the district court noted in *Kirkpatrick v. Ironwood Communications, Inc.*, "that the legislature chose to specifically exempt such WLAD claims from the scope of the CPA suggests that where it has declined to do so, courts should not construct such an exemption." 2006 WL 2381797, at *13 (W.D. Wash. Aug. 16, 2006) (citing *Hangman*, 719 P.2d at 536 ("[T]he Legislature, not this court, is the appropriate body to establish th[e] interaction [between the CPA and other statutes] by declaring a statutory violation to be a per se unfair trade practice.")). The *Kirkwood* court ultimately found "no authority" supporting the employer's argument that the WCPA does not apply to employment-related disputes. *Id.* at *13-14.

The court is far more persuaded by the *Kirkwood* court's thoughtful analysis of the issue than by the primary case relied upon by the Bank, *Baxter v. National Safety Council*, 2006 WL 2473467 (W.D. Wash. Aug. 25, 2006). In *Baxter*, the employer moved for summary judgment on the plaintiffs' claims, including their WCPA claims. *Id.* at *1-2. Significantly, the plaintiffs did not file a response to the motion for summary judgment and, thus, the court did not have the benefit of any arguments or evidence supporting those claims. *Id.* at *2. In any event, the district court held that plaintiffs had come forward with "no evidence demonstrating any

24

deceptive or unfair acts" by the employer, warranting summary judgment in favor of the employer. *Id*. at *4. In dicta, the district court then noted that, even if the plaintiffs had come forward with such evidence, "the employer-employee relationship is not considered to fall within the definition of 'trade or commerce.'" *Id*. In support of that statement, the district court relied only on the language of the WLAD exclusion and broadly summarized that provision as excluding from CPA coverage "any unfair practice committed by an employer against an employee or prospective employee." *Id*. As explained above, the court simply cannot read that exclusion so broadly. That exclusion plainly provides only that WLAD violations arising out of the employment relationship cannot constitute per se violations of the WCPA. *See Bruce v. Northwest Metal Prods. Co.*, 903 P.2d 506, 517 (Wash. Ct. App. 1995) (WLAD statutory exclusion only precludes a finding that an employer's violation of the WLAD is a per se violation of the WCPA).

In sum, the court cannot conclude as a matter of law that plaintiffs' WCPA claims are barred simply because they are based upon plaintiffs' employment-related disputes with the Bank. The Bank's motion with respect to this issue is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss plaintiffs' consolidated complaint pursuant to Rule 12(b)(6) (doc. 60) is denied in its entirety and the Bank's alternative motion to strike Counts VII and XV of plaintiffs' consolidated complaint (doc. 61) is denied in part and granted in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** this case is now ready for further scheduling concerning pre-certification discovery and motion practice on the issue of certification. Toward that end, the parties, as soon as practicable, shall be in contact with United States Magistrate Judge Sebelius for purposes of setting a scheduling conference at the earliest mutual convenience of all concerned.

**IT IS SO ORDERED** this 20th day of October, 2010.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge