**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| | ) | |
| IN RE: BANK OF AMERICA | ) | |
| WAGE AND HOUR EMPLOYMENT | ) | |
| PRACTICES LITIGATION | ) | |
| | ) | No. 10-MD-2138-JWL |
| This Order Relates to All Cases | ) | |
| | ) | |
| | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter comes before the Court upon Plaintiffs' Motion to Compel Discovery and Supporting Memorandum (ECF No. 242). Defendants have filed a response in opposition. For the reasons explained below, Plaintiffs' motion is granted.

**I.      Background**

This is a multidistrict litigation ("MDL") proceeding in which Plaintiffs, on behalf of themselves as well as current and former non-exempt retail branch and call center employees, allege Bank of America, N.A. and Bank of America, Corporation ("the Bank") violated both federal and state wage-and-hour laws. More specifically, Plaintiffs allege the Bank deliberately failed to pay its retail branch and call center employees their earned wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and California and Washington state law.

The named Plaintiffs seek to represent a nationwide collective action class of non-retail branch and call center employees for alleged violations of FLSA overtime provisions. The California retail branch and call center representatives seek to represent a Fed. R. Civ. P. 23 class of non-exempt California retail branch and call center employees for alleged violations of California state law. The Washington retail branch representatives seek to represent a Rule 23

class of non-exempt Washington retail branch employees for alleged violations of Washington state law.

The dispute at issue in the motion to compel concerns the discoverability of the names and contact information of former Bank employees who worked in certain positions.  Plaintiffs' Interrogatory No. 11 seeks,  "The name, address, and phone number for all former Market Managers and Market Executives who were employed by the Defendants during the 'retail banking center class period.'"[1]  Interrogatory No. 12 seeks, "The name, address, and phone number for all former Branch Managers who were employed by the Defendants during the 'retail banking center class period' for all the branches selected by the Plaintiffs as identified in the Plaintiffs' February 25, 2011 e-mail to defense counsel."[2]  The e-mail identified thirty percent of the bank's branches.[3]  In a footnote in Plaintiffs' reply brief, Plaintiffs seem suggest that sampling is no longer appropriate.[4]  Generally, the Court will not consider relief requested for the first time in a reply brief.[5]  Because Plaintiffs originally moved to compel a response to Interrogatory No. 12 that was limited to a thirty-percent sampling, the instant Memorandum and Order addresses that request and does not consider Plaintiffs' contention that sampling is no longer appropriate.

---

[1] Defs.' Resps. to MDL Pls.' Second Set of Interrogs. at 5, ECF No. 242-1.

[2] *Id.*

[3] *Id.* at 2 n.1.

[4] *See* Pls.' Reply Mem. in Supp. of Pls.' Mot. to Compel at 4 n.2, ECF No. 247 ("Defendants also seemed to have dropped their sampling argument.  Given the small number of individuals at issue by these requests, Plaintiffs do not believe sampling is appropriate.").

[5] *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009); *Minshall v. McGraw Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003).

2

In response to Plaintiffs' motion to compel, the Bank asserts that these interrogatories are overly broad, do not seek relevant information, and that the former employees' privacy rights outweigh the Plaintiffs' need for discovery.  The Court addresses each of these objections in turn.

## II.   Discussion[6]

Fed. R. Civ. P. 26(b)(1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  When a party fails to make disclosure or discovery, the opposing party may file a motion to compel.  When a party files a motion to compel and asks the court to overrule certain objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[7] Objections initially raised but not supported in response to the motion to compel are deemed abandoned.[8]  However, if the discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[9]  With this standard in mind, the Court turns to the Bank's objections.

### A.   Relevance

---

[6] Before considering the merits of a motion to compel, the Court generally must satisfy itself that the movant has made a sufficient attempt to confer with the opposing parties prior to filing the motion.  *See* Fed. R. Civ. P. 37(a)(1); D. Kan Rule 37.2.  The undersigned previously made this finding during a scheduling conference with the parties on June 3, 2011.  Accordingly, the Court finds no need to further address this matter in the instant Memorandum and Order.

[7] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

[8] *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) (citing *Sonnino*, 221 F.R.D. at 670); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[9] *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003) (citing *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000)).

Relevant information need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence.[10]  The Court broadly construes relevance at the discovery stage of litigation, and "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[11]  "There is no presumption in the Federal Rules of Civil Procedure that a discovery request is relevant."[12]  However, relevance is often apparent on the face of the request.[13]  When it is not, the proponent of the discovery has the burden to show the relevance of the discovery sought.[14]  If a discovery request seeks facially relevant information or if the proponent has demonstrated relevance, the party resisting discovery must establish the lack of relevance by demonstrating the requested discovery either: (1) is outside the scope of relevance as defined by Rule 26(b), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[15]

Plaintiffs argue that the former branch managers, market executives, and market managers ("the former employees") have information relevant to claims and defenses in this proceeding.  As previously noted, Plaintiffs have proposed a nationwide class pursuant to 29

---

[10] Fed. R. Civ. P. 26(b)(1).

[11] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[12] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) (citing *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

[13] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[14] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20; *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 309 (D. Kan. 1996)).

[15] *Id.* at *8 (citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004)).

U.S.C. § 216(b) of the FLSA.  Plaintiffs' Consolidated Complaint alleges that: the Bank had a company-wide practice of requiring nonexempt bank branch employees to perform work off the clock; Branch Managers were under instructions and pressure from the Bank to restrict overtime to be paid; the Bank did not allow putative class members to record all hours worked; the Bank erased or modified putative class members' recorded hours or required those employees to modify their own hours; and the Bank required putative class members to work uncompensated during breaks and would offer "comp time" in lieu of paying overtime wages.[16]  Plaintiffs state these former employees likely have information related to the implementation of the Bank's overtime policies and procedures, and Plaintiffs contend this information could assist them in establishing the parameters of the putative class.

To obtain conditional certification of the FLSA collective action, Plaintiffs must show that members of the putative class are similarly situated.[17]  Under the Tenth Circuit's approach, this showing requires "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[18]  It appears reasonably likely that these former employees would possess information about the extent of the alleged policy or plan. Accordingly, the Court finds that the interrogatories, on their face, seek relevant information. Moreover, Plaintiffs have sufficiently explained the relevance of the requested discovery.  As such, the Bank bears the burden to support its relevance objection.

---

[16] *See* Consolidated Compl., ECF No. 42.

[17] *See* 29 U.S.C. § 216(b) (providing that an action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated").

[18] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

The Bank's argument is twofold.  First, the Bank argues Plaintiffs are already in possession of sufficient information and discovery to support their effort to certify any class in this proceeding.  In support of this argument, the Bank details the discovery it has produced or agreed to produce, which the Bank contends should enable Plaintiffs to discover the extent of the Bank's policies and procedures.  The Court is unpersuaded by this argument.  The fact that Plaintiffs may possess other information that may aid them in determining whether the Bank had a nationwide policy of failing to pay overtime wages does not lessen the relevance of the information the interrogatories seek.

The Bank next argues Plaintiffs' proffered explanation of relevance is nothing more than speculation because Plaintiffs have not made any showing of any alleged violations occurring at locations other than those where the named and opt-in Plaintiffs worked.  Generally, a party is not required to come forward with evidence in support of its claims before the Court will allow discovery of those claims.[19]  Although some courts have, at times, required a heightened showing of relevance before allowing certain discovery, the circumstances here do not warrant such a showing.[20]  Importantly, the Bank does not assert it would be unduly burdensome to produce the requested information.  It appears this information is reasonably accessible to the Bank, and the information appears facially relevant.  For these reasons, the Bank's relevance objection is overruled.

---

[19] *See Mackey v. IBP, Inc.*, 167 F.R.D. 186, 193 (D. Kan. 1996) ("A party does not have to prove a *prima facie* case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence.").

[20] *See, e.g., DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 686 (D. Kan. 2004) (recognizing that some courts have held a party must make a heightened showing of relevance in order to discover information related to settlement agreements); *Hartford Fire Ins. Co. v. P & H Cattle Co., Inc.*, No. 05-2001-DJW, 2009 WL 2951120, at *7 (D. Kan. Sept. 10, 2009) (applying a two-pronged test to determine whether tax returns were discoverable).

### B.      Overbreadth

As an initial matter, the Court finds the interrogatories are not facially overly broad. They seek the names and contact information of former managerial-level employees who held specific titles during a specific time period, and as previously explained, this information appears relevant.  Because the interrogatories are not facially objectionable, it is the Bank's burden to support its overbreadth objection.

The Bank's overbreadth objection is largely intertwined with its relevance objection. Essentially, the Bank argues the interrogatories are overly broad because the information sought is not relevant.  Currently, the Plaintiffs in this litigation come from eighteen states covering four percent of the Bank's retail branches nationwide.[21]  However, the scope of the interrogatories encompasses contact information for individuals who worked at branches where no named or opt-in Plaintiffs worked.  The Bank states the majority of these individuals have no connection to the named or opt-in Plaintiffs.  Plaintiffs argue this information is relevant to the extent of the alleged nationwide policy or practice of the Bank and may help them define the putative class. Therefore, the fact that many of these managerial-level employees may not have had contact with the named or opt-in Plaintiffs does not persuade the Court that this discovery is overly broad.

The Bank also points the Court to *Tracy v. Dean Witter Reynolds, Inc.*, a 1998 opinion from the District of Colorado, which the Bank contends is instructive on the scope of pre-certification discovery in a potential wage-and-hour class and collective action.[22]  *Tracy* involved

---

[21] *See* Defs.' Opp'n to Pls.' Mot. to Compel Disc. at 1, ECF No. 245.

[22] *See Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303 (D. Colo. 1998).

a ruling on whether to allow plaintiffs in a wage-and-hour potential Rule 23 class action/FLSA collective action to obtain discovery from Dean Witter's offices nationwide.  From the time of the scheduling conference with the court, the magistrate judge allowed plaintiffs to conduct discovery only in the Dean Witter office at the Denver Tech Center.[23]  The magistrate judge ruled he would not allow discovery from other offices unless plaintiffs could present facts demonstrating a reasonable likelihood Dean Witter had a policy or practice of denying overtime pay to its employees.  Plaintiffs moved to extend the scope of discovery on several occasions, and the court denied each request.  Plaintiffs again moved to extend the scope, arguing discovery from other offices was warranted because Dean Witter had a nationwide *de facto* policy and practice of refusing to pay overtime wages.  The court denied the motion because it found plaintiffs had failed to present sufficient evidence that Dean Witter maintained or pursued a national policy that violated the FLSA.[24]

While recognizing the necessity of "some discovery" prior to certification, the court also noted the need to control, and in some cases limit, pre-certification discovery.  Relying on the District of Connecticut's opinion in *National Organization for Women v. Sperry Rand Corp.*, the court reasoned, "The discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts present an undue burden to the defendant."[25]

Indeed, in *National Organization for Women*, the District of Connecticut focused on the

---

[23] *Id.* at 304.

[24] *Id.* at 313.

[25] *Id.* at 305 (citing *Nat'l Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980)).

burden imposed on the defendant in responding to plaintiffs' discovery requests.[26]  Plaintiffs

sought to represent a Rule 23 class in the employment discrimination action.[27]  In the pre-

certification phase of discovery, plaintiffs served interrogatories and requests for production,

which they argued were aimed at gathering discovery relevant to the issue of class certification.[28]

The court noted the discovery sought could reach into defendant's three-hundred plants

nationwide, and defendant contended such discovery would cost three-million dollars.[29]  In light

of the burden imposed on defendant, the court limited the scope of the discovery requests,

including a geographic limitation on information responsive to multiple interrogatories.[30]

 *Tracy* and *National Organization for Women* illustrate that it is within the court's

discretion to limit the scope of pre-certification discovery in certain instances.  Nevertheless,

there is no bright-line rule that in the pre-certification phase of discovery, plaintiffs must come

forward with evidence of a nationwide policy or practice before being allowed to obtain

discovery aimed at that very issue.[31]  This is particularly true when the burden imposed on the

responding party is minimal.  The notion that broad pre-certification discovery could unduly

---

[26] *See Nat'l Org. for Women*, 88 F.R.D. at 276-77.

[27] *Id.* at 273.

[28] *Id.* at 275-76.

[29] *Id.* at 276.

[30] *Id.* at 278-80.

[31] *See Jones v. Nat'l Council of YMCA*, No. 09 C 6437, 2011 WL 1312162, at *3-4 (N.D. Ill. Mar. 31, 2011) (allowing discovery of potential Rule 23 class members' names and contact information because such information was relevant to plaintiffs' claims that defendant had a pattern or practice of discriminating on the basis of race); *see also Hammond v. Lowe's Home Ctrs.*, 216 F.R.D. 666, 671 (D. Kan. 2003) (compelling defendant in the pre-conditional certification stage of an FLSA collective action to respond to interrogatories seeking, among other things, putative class members' contact information and information about the salary/overtime plans of other Lowe's regions and districts).

burden defendants is implicit in opinions requiring plaintiffs to show such discovery is likely to produce substantiation of the class allegations.[32]  In *National Organization for Women*, full compliance with the discovery requests would have imposed an undue burden on defendant, which was the rationale for limiting the scope of the requests.  In *Tracy* the court imposed limitations at the time of the scheduling conference—presumably to manage discovery so as to avoid imposing an undue burden on the defendant.  However, the reasons for the initial limitation are not clear from the opinion.

At the second scheduling conference with the Court, the Bank made clear it does not contend that responding to the interrogatories would pose an undue burden.  Similarly, in response to the motion to compel, it has lodged no such objection.  Thus, there is no compelling reason to limit the discovery sought.  The Bank's overbreadth objection is overruled.

## C.    Privacy Interests

Generally, concerns about confidentiality or the disclosure of private or sensitive information are not a sufficient basis to withhold discovery and are best addressed in the form of a protective order.[33]  Despite this, the Bank argues privacy interests of its former employees outweigh the need for discovery.  The Bank states that approximately 1,200 of these former

---

[32] *See Franco v. Bank of Am.*, No. 09cv1364-LAB (BLM), 2009 U.S. Dist LEXIS111873, at *7-12 (S.D. Cal. Dec. 1, 2009) (denying plaintiff's motion to compel contact information for the proposed putative class because plaintiff had failed to make a sufficient showing that the Bank had a company-wide policy and practice to withhold regular and overtime wages and finding plaintiff's proposed notices to class members was overly broad and unduly burdensome); *Welch v. Eli Lilly & Co.*, No. 1:06-cv-0641-RLY-JMS, 2009 WL 700199, at *10 (S.D. Ind. Mar. 16, 2009) (denying plaintiffs' request for company-wide discovery because the proposed discovery would subject defendant to an undue burden).

[33] *See Beach v. City of Olathe*, 203 F.R.D. 489, 495 (D. Kan. 2001); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 689-90 (D. Kan. 2000); *see also Cook v. Am. Nat'l Red Cross*, No. 97-1331-MLB, 1998 WL 46399, at *2 (D. Kan. Jan. 29, 1998) (ordering the release of the names, addresses, and telephone numbers of nonparty blood donors who may have witnessed the alleged injury at issue and finding the privacy interests of these donors would be adequately protected by a protective order).

employees reside in California.  As such, the Bank argues that California case law interpreting the state constitution's right-to-privacy provision prohibits discovery of the former employees' contact information or requires the Court to adopt a procedure whereby the employees may opt-out of having their identities and contact information disclosed to the Plaintiffs.[34]

The Bank relies on California case law interpreting Article I, Section I of the California Constitution, which expressly provides an inalienable right to privacy.  "[I]n many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts."[35] To that end, California courts have interpreted the state constitutional privacy provision as creating "a zone of privacy which protects against unwarranted compelled disclosure of certain private information."[36]  In determining whether compelled disclosure is warranted, the court often weighs the privacy interests against the need for discovery.[37]

For example, the Bank cites *Planned Parenthood Golden Gate v. Superior Court*.  In that case, Planned Parenthood sought review of the lower court's order compelling disclosure of the names, addresses, and telephone numbers of nonparty volunteers and staff of Planned

---

[34] The Bank also cites United States Supreme Court precedent for general statements regarding privacy interests in the home.  The Bank does not explicitly argue these opinions would bar the discovery at issue here, nor do these opinions stand for that proposition.  *See U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487 (1994) (determining the federal Privacy Act forbid disclosure of home addresses to union representatives); *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728 (1970) (upholding the constitutionality of a statute providing a procedure whereby addressees may remove their names from mailing lists to receive arousing or sexually provocative advertising and generally recognizing privacy interests in the home).

[35] *Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797, 808 (Cal. 1997).

[36] *Planned Parenthood Golden Gate v. Superior Court*, 99 Cal. Rptr. 2d 627, 636 (Cal. Ct. App. 2000).

[37] *Id.* at 636-37.

11

Parenthood.[38]  The underlying case involved claims asserted by an anti-abortion picketer against

Planned Parenthood and counterclaims and third-party claims Planned Parenthood asserted

against the plaintiff and other picketers.[39]  In vacating in part the order compelling disclosure, the

appellate court noted the residential privacy interest at stake was "particularly potent in the

context of a dispute relating to the ability of women to seek and obtain lawful services related to

pregnancy."[40]  The court found that under these circumstances, "the consequences of disclosure

of the private information are profound."[41]

      The Bank also cites *Belaire-West Landscape, Inc. v. Superior Court*, a California

appellate opinion recognizing putative class members' privacy interests.[42]  In the pre-

certification phase of a wage-and-hour putative class action, plaintiffs sought disclosure of the

names and contact information of defendant's current and former employees.[43]  The trial court

allowed disclosure of this information through a procedure whereby putative class members

could opt out of having their names and contact information disclosed.[44]  The defendant sought

review, and the appellate court upheld the lower court's ruling, reasoning that the opt-out

procedure sufficiently protected the privacy rights of the putative class members.[45]  The Bank

---

[38] *Id.* at 634-35.

[39] *Id.* at 632-33.

[40] *Id.* at 637.

[41] *Id.* at 638.

[42] *Belaire-West Landscape, Inc. v. Superior Court*, 57 Cal. Rptr. 3d 197, 202  (Cal. Ct. App. 2007).

[43] *Id.* at 198-99

[44] *Id.* at 198-200

[45] *Id.* at 199-200, 203.

argues the former employees at issue here have an even stronger privacy interest than the *Belaire* employees because they are not potential class members who could seek to recover from this suit.

*Puerto v. Superior Court* is more persuasive.[46]  In that case, plaintiffs had requested the names, addresses, and telephone numbers for employees who had knowledge of the alleged incidents giving rise to the wage-and-hour claims.[47]  Defendant Wild Oats provided the names of the employees but objected to providing contact information.[48]  The trial court provided for disclosure by a procedure allowing the employees to consent to having their contact information disclosed.  The appellate court reversed, ordering the disclosure of contact information without so-called procedural safeguards.[49]  Among the reasons for disclosure, the court noted plaintiffs were entitled to discover contact information for potential witnesses.[50]

Although cited by Plaintiffs in their initial motion and memorandum, the Bank does not attempt to distinguish *Puerto* (or similar opinions) in its response brief even though *Puerto* distinguished much of the authority relied upon by the Bank.  For example, *Puerto* noted "salient distinctions" between discovering potential witness contact information and case law addressing pre-certification discovery aimed at identifying class members—namely, that witnesses may not

---

[46] *See Puerto v. Superior Court*, 70 Cal. Rptr. 3d 701 (Cal. Ct. App. 2008).

[47] *Id.* at 703.

[48] *Id.* at 704.

[49] *Id.* at 704, 715.

[50] *Id.* at 706 ("Indeed, our discovery system is founded on the understanding that parties use discovery to obtain names and contact information for possible witnesses as the starting point for further investigations . . . .").

opt out of discovery.[51]  Moreover, *Puerto* also distinguished discovery in routine civil litigation

from the situation in *Planned Parenthood*, which involved "'unique concerns of the 'emotionally

charged and often violent' abortion debate[.]'"[52] As *Puerto* noted, disclosure in *Planned*

*Parenthood* could have placed the workers in physical danger.[53]  Whereas in *Puerto* "the dangers

of being 'outed' as individuals who work at a grocery store cannot be equated with the

impingement of associational freedom likely to occur when, as in *Planned Parenthood*, the

disclosure identifies the individual as assisting in the operation of an abortion clinic."[54]  In

*Puerto*, the court ultimately concluded that while individuals may have a legitimate expectation

of privacy in their contact information, disclosure of the requested information did not pose a

serious invasion of that interest.[55]  Other California state and federal court decisions addressing

these issues have reached similar conclusions and have permitted disclosure.[56]

---

[51] *Id.* at 708 ("As pursuing litigation is a voluntary activity, an opt-out letter that offered recipients the option of participating or declining to participate was appropriate.  In contrast, a percipient witness's willingness to participate in civil discovery has never been considered relevant—witnesses may be compelled to appear and testify whether they want to or not.").

[52] *Id.* at 710 (quoting *Planned Parenthood*, 99 Cal. Rptr. 2d at 640).

[53] *Id.* at 710-11 (citing *Planned Parenthood*, 99 Cal. Rptr. 2d at 639-40).

[54] *Id.* at 711.

[55] *Id.* at 708-11.

[56] *See Stone v. Advance Am.*, No. 08cv1549 WQH (WMC),  2010 WL 5892501, at *1-2 (S.D. Cal. Sept. 21, 2010) (allowing discovery of the identities and contact information of defendant's former employees); *McCardle v. AT&T Mobility, LLC*, No. C 09-1117 CW (MEJ), 2010 U.S. Dist. LEXIS 47099, at *10, *16-17 (N.D. Cal. Apr. 16, 2010) (allowing the release of some putative class members' contact information and noting that written notice to the class members was unnecessary because they were also potential witnesses and "witnesses cannot choose to 'opt out' of civil discovery"); *Tierno v. Rite Aid Corp.*, No. C 05-02520-THE, 2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008) (affirming a magistrate judge's order permitting discovery of current and former store managers who worked for defendant); *Wiegele v. Fedex Ground Packaging Sys.*, No. 06-CV-01330-JM(POR), 2007 WL 628041, at *4 (S.D. Cal. Feb. 8, 2007) (affirming a magistrate judge's order allowing disclosure of names and contact information for putative class members); *Crab Addison, Inc. v. Superior Court*, 87 Cal. Rptr. 3d 400, 413(Cal. Ct. App. 2008) (upholding the trial court's ruling allowing disclosure of the identities and contact information of class members).

14

Although the Bank's former employees may have a privacy interest in disclosure of their identities and contact information, such disclosure does not pose a serious invasion of privacy in routine civil cases, such as this wage-and-hour MDL proceeding.  Moreover, these former employees likely have information about the Bank's overtime policies, which as previously explained, appears relevant.  In short, Plaintiffs' need for discovery outweighs any minimal invasion of former employees' privacy.

For the foregoing reasons, the Bank's privacy objection is overruled.  Plaintiffs' motion to compel is granted, and the Bank is ordered to supplement its responses to the interrogatories within fourteen (14) days from the date of this Memorandum and Order.  In order to address privacy considerations, the Court orders that the Bank's responses to the interrogatories be deemed "Confidential" under the Protective Order previously entered.[57]

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Discovery and Supporting Memorandum (ECF No. 242) is hereby granted.

**IT IS FURTHER ORDERED** that within fourteen (14) days from the date of this order, the Bank shall supplement its responses to Interrogatories Nos. 11 and 12 of Plaintiffs' Second Set of Interrogatories.

**IT IS SO ORDERED.**

Dated this 19th day of July, 2011, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[57] *See* Protective Order, ECF No. 50.

15