IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: BANK OF AMERICA
WAGE AND HOUR EMPLOYMENT
LITIGATION                                             No.  10-MD-2138-JWL

This Order Relates to All Cases

_____

**MEMORANDUM & ORDER**

This multidistrict litigation proceeding consolidates numerous putative collective and class actions against Bank of America, N.A. and related entities ("the Bank") on behalf of current and former non-exempt retail branch and call center employees alleging violations of both federal and state wage and hour laws.  On October 18, 2011, the court held a status conference with the parties to discuss, among other things, ongoing issues related to the Bank's ability to settle individual claims of putative class members without the involvement of MDL plaintiffs' lead counsel.

Prior to the conference, the Bank, in an abundance of caution, raised in its submissions the more specific issue of whether and to what extent the Bank, in connection with its anticipated company-wide reduction in force (which the Bank predicts will affect a significant portion of its workforce) could offer to and obtain severance packages from putative class members in exchange for the release of MDL claims without the involvement of or notice to

MDL plaintiffs' lead counsel.[1] Because plaintiffs did not have the opportunity to respond to that particular issue in writing prior to the conference, the court and the parties discussed the severance issue briefly at the conference and the court ultimately directed the Bank to file a motion to amend or clarify this court's orders with respect to the Bank's obligation, if any, to involve or notify MDL plaintiffs' lead counsel in connection with offering to and obtaining severance agreements from putative class members.

The Bank filed its motion and, in response, plaintiffs provided a substantive response to the issues raised by the motion but also requested that the court order the Bank to provide certain information to plaintiffs concerning the anticipated RIFs (such as the timing and sequence of the anticipated RIFs and a copy of the severance agreement the Bank intends to provide to employees) and sought an opportunity to provide supplemental briefing once plaintiffs obtained the information from the Bank. The court retained the Bank's motion under advisement, directed the Bank to provide certain information to plaintiffs and established a supplemental briefing schedule. That information has now been shared with plaintiffs, supplemental briefs have been filed and the matter is ripe for resolution.

In its motion, the Bank explains that it intends to offer severance packages to employees impacted by its anticipated RIFs which will require that all employees receiving severance

---

[1] To date, the Bank is not able to identify specifically which or how many employees will be impacted by the RIFs or how many of those employees may be putative class members in this MDL. The Bank is also not able to identify the timing or sequence of the RIFs.

2

benefits sign a severance agreement in order to be eligible to receive those benefits. As summarized by the Bank, the contemplated severance agreement will (1) prohibit the employee from bringing or participating in any type of collective or class action and (2) require the employee to confirm, represent and warrant that all of their hours worked have been fully and accurately reported to the Bank and that they have been fully and properly paid for all hours worked. The agreement will not seek or require a release or waiver of any employee's individual, substantive FLSA claims though the Bank states its intention to defend against such lawsuits with, among any other available defenses, the representation contained in the agreement. The Bank further asserts that whenever it offers severance benefits to a putative class member, the Bank will provide to the putative class member notice of the following in connection with the offered severance package: (1) the pendency of this MDL proceeding and the URL for the Court's website about this MDL;[2] (2) that, if they wish to pursue their claims as part of this MDL, they should not sign the severance agreement and accept the severance benefits being offered to them; and (3) that, if they prefer to sign the severance agreement and accept the severance benefits, they may be precluded from any recovery that may result from this MDL. The Bank does not contemplate providing additional consideration to putative class members for extinguishing their MDL claims.

---

[2] The website contains a summary of the claims in this MDL and lists the names and contact information for MDL plaintiffs' lead counsel.

As indicated earlier, the Bank would like to offer to and obtain severance agreements (including a release of MDL claims) from putative class members in this MDL without the involvement of or notice to MDL counsel or this court. Toward that end, it moves to clarify or amend Paragraph 6 of this court's Practice and Procedure Order No. 2 and Paragraph 4 of this court's February 25, 2011 order to ensure that it may move ahead with its proposed severance plan without violating any orders of this court. Paragraph 6 of the court's Practice and Procedure Order No. 2 (as amended in October 2011) reads as follows:

> 6. Any discussions of a settlement that would affect any claims brought in this litigation, other than discussions of a settlement concerning the individual claims of a putative class member before certification of a class of which he or she would be a member or of an individual who has not opted-in as a plaintiff in this case which discussions are initiated before the court grants preliminary certification of a collective action or certifies a class of which he or she would be a member, must be conducted by plaintiffs' lead counsel. Any proposed settlement that resolves, in whole or in part, the claims brought in this action shall first be subject to review and approval by the Court in this litigation.

Paragraph 4 of the court's February 25, 2011 order, as amended in October 2011, reads as follows:

> 4. The Bank will notify the Court and plaintiffs' lead counsel of any arguably related individual or class action lawsuits filed within 20 days of service of the same on the Bank. The Bank will notify the Court and plaintiffs' lead counsel of the fact of any settlements that are reached in any such cases within 20 days of any such settlements being agreed to in principle but no less than 20 days prior to such settlements becoming binding on the parties.

As will be explained, the court concludes that the Bank, prior to the entry of a certification order, is free to offer to and obtain severance agreements from putative class members without

4

the involvement of MDL plaintiffs' counsel.[3] After certification, the Bank may offer to and obtain severance agreements from class members only through plaintiffs' MDL counsel. Because the plain language of paragraph 6 clearly authorizes the Bank to act in this respect, no amendment of paragraph 6 is warranted. Similarly, because the notice required in Paragraph 4 of the court's February 25, 2011 order (as amended in October 2011) applies only to the settlement of lawsuits, no amendment of paragraph 4 is warranted.

As the court explained at the October 18, 2011 status conference, paragraph 6 of the court's Practice and Procedure Order No. 2 is intended to recognize that putative class members have not asked to be a part of the MDL process. Until a certification order is entered, the court, in its limited role as an MDL court, will not interfere with the legitimate interests of the Bank and those putative class members who want to resolve potential claims against the Bank. For this reason, paragraph 6 expressly carves out those circumstances from the circumstances under which the Bank must involve MDL plaintiffs' counsel in settlement discussions. The Bank's negotiation of a severance agreement with a putative class member is no different. The integrity of the MDL process–which this court must protect–is not threatened or undermined by the decisions of putative class members, so long as they have the notice of this MDL that the Bank specifically represents it will provide in the severance agreements to alert them of potential claims, to resolve potential claims now through a severance agreement rather than wait what

---

[3] The Bank does not dispute that it may only offer a severance agreement to a named or opt-in plaintiff through MDL plaintiffs' counsel.

might be years for resolution of those claims in the MDL context. *See Gortat v. Capala Bros., Inc.*, 2011 WL 2133769, at *2 (E.D.N.Y May 27, 2011) (granting defendant's motion to remove 54 members of Rule 23 certified class based on release forms defendant had obtained prior to certification order barring defendant's communication with class members; court also noted that none of these individuals had opted-in to the FLSA action, indicating that they had no desire to pursue their claims).

That being said, the Bank may not use the severance program as an "end run" around the MDL. Plaintiffs contend in their submissions that any attempt by the Bank to extinguish potentially thousands of claims in the MDL is tantamount to settling class claims and necessarily undermines the MDL process. Plaintiffs, however, do not suggest that the Bank lacks an independent business purpose for conducting the anticipated RIFs. Thus, the mere fact that there are numerous putative class members for this MDL should not derail an otherwise bona fide RIF that might implicate even a large number of those putative class members. If plaintiffs, at some point, are able to muster evidence to demonstrate that the Bank's RIF or the execution of that RIF is not bona fide but is merely an end run, then the court will take up the effect of the Bank's severance plan in that context. Until then, the court will not interfere with the Bank's legitimate interest in reducing its workforce and the legitimate interests of putative class members in resolving their claims through severance agreements.

In their response to the Bank's motion, plaintiffs raise a host of substantive arguments against the Bank's proposed severance plan, including that the plan is retaliatory; that FLSA

claims cannot be compromised by private agreements; that the Bank's "representation and warranty" language is unenforceable; and that the class and collective action waiver is unlawful. Aside from the retaliation argument, which the court addresses below, resolution of the issues raised by plaintiffs is premature at this stage. The role of an MDL court is to oversee coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407. The only issue concerning the Bank's proposed severance plan which implicates this court's limited role as an MDL court as matters now stand is simply to determine whether an execution of that plan might somehow undermine the overall MDL process and whether MDL plaintiffs' counsel is entitled to have a role in the execution of that plan in light of the court's responsibility to protect the integrity of the MDL process. The substantive issues raised by plaintiffs in response to the Bank's motion do not concern the integrity of the MDL process–the issues speak to whether and to what extent an individual putative class member, at some future date, might successfully bring a wage and hour claim against the Bank either individually or as a participant in this action irrespective of the proposed severance agreement that the Bank might obtain from that putative class member. Plaintiffs seek to challenge prospectively the enforceability of individual severance agreements not yet executed by any putative class members. Resolution of these issues must await the filing of a wage and hour lawsuit against the Bank by a putative class member who has signed such an agreement or the attempt to participate in this action by one who has done so. At that point, the issues raised by plaintiffs may be resolved by whatever court the case is before.

Plaintiffs' concern that the severance plan proposed by the Bank is potentially retaliatory is an issue that the court will address because that issue arguably bears on the integrity of the MDL process to the extent plaintiffs contend that the Bank's plan unduly punishes putative class members by conditioning severance benefits on the relinquishment of MDL claims without additional consideration. At this juncture, plaintiffs have not shown that the Bank's severance plan is retaliatory. To date, the only individuals who have engaged in any protected activity or exercised their legal rights are named plaintiffs and opt-in plaintiffs and there is no dispute that the Bank must approach these plaintiffs through counsel. Plaintiffs' counsel, then, will have the opportunity to raise any concerns about retaliation in connection with any specific severance agreements presented to a named plaintiff or opt-in plaintiff.

With respect to the notice provision in Paragraph 4 of the court's February 25, 2011 order (as amended on October 18, 2011), that provision, as it presently reads, requires the Bank to provide notice within certain time frames to the court and MDL plaintiffs' counsel of any settlements of "any arguably related or class action lawsuits." This provision, then, does not require notice of severance agreements between putative class members and the Bank in the absence of a pending lawsuit. No modification of Paragraph 4, then, is warranted.[4]

---

[4] In its motion, the Bank also seeks clarification as to the precise scenarios contemplated by Paragraph 6 and Paragraph 4 under which the Bank must consult with and provide notice to MDL plaintiffs' counsel. The court does not believe that any clarification is required beyond that provided in this order. To the extent a specific concern is raised, the court will address that concern in the context of the facts presented.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Bank's motion to clarify or amend Practice and Procedure Order No. 2 and the Court's February 25, 2011 order, as amended on October 18, 2011, is granted.

**IT IS SO ORDERED** this 13th day of March, 2012.

                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge