**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**


IN RE: BANK OF AMERICA
WAGE AND HOUR EMPLOYMENT
LITIGATION                                               **Case No. 10-MD-2138-JWL**

**This Order Relates to All Cases**


**MEMORANDUM & ORDER**

In November 2012, the court, upon joint motion of the parties, stayed this multidistrict

litigation proceeding to permit the parties to engage in meaningful settlement negotiations.  Prior

to the stay, in September 2012, the court granted plaintiffs' motion for conditional certification

of a nationwide FLSA collective action based on plaintiffs' theory that the Bank maintained a

uniform, companywide policy and practice requiring non-exempt retail banking center

employees to perform off-the-clock work in violation of the FLSA.  At that same time, the court

denied plaintiffs' motion for Rule 23 class certification of California and Washington state law

claims alleging off-the-clock work; meal and rest period violations; inaccurate wage statements;

forfeiture of vacation pay; and waiting time violations.  Because the parties had agreed to a

separate briefing schedule for plaintiffs' motion to certify claims asserted on behalf of the

Bank's current and former call center employees, the court had not ruled on that motion at the

time it entered the stay.

This matter is now before the court on plaintiffs Albert Lopez and Rene Pompa's motion

to lift the stay so that the court, among other things, can order specific performance of a

settlement agreement between the Bank and the plaintiffs in *Lopez v. Bank of America, N.A.*, a

case that was transferred to this court from the Northern District of California by the Judicial Panel on Multidistrict Litigation (JPML) in October 2010.  By way of background, the *Lopez* case asserts Rule 23 class claims on behalf of current and former Bank employees in California arising out of the Bank's alleged issuance of inaccurate wage statements under section 226(a) of the California Labor Code.  Despite the fact that *Lopez* was a pending federal court case that undisputedly overlapped with this MDL proceeding, the Bank did not disclose the *Lopez* matter to the JPML or to this court based on the Bank's assessment that a transfer would not be productive because the parties were close to achieving a settlement.  Indeed, in July 2010, the parties in the *Lopez* case obtained preliminary approval of the parties' settlement.[1]  Counsel for plaintiffs in this MDL discovered the *Lopez* preliminary settlement via an online daily legal news service.  Upon the motion of the MDL plaintiffs, this court enjoined the Bank from proceeding with the *Lopez* settlement (and, specifically, from issuing any notice of the proposed settlement to the *Lopez* class members) pending a decision from the JPML about whether *Lopez* should be transferred as a tag-along action to the MDL for consolidation with the cases pending here.  In October 2010, without objection from the *Lopez* plaintiffs, the JPML transferred *Lopez* to this MDL for consolidated pretrial proceedings.

---

[1] The *Lopez* settlement provides for a maximum payment by the Bank of $4.7 million.  The settlement documents submitted by the parties to the district court in the Northern District of California reflect that the parties contemplated the following distribution of that amount: $20,000 each to both named plaintiffs as enhancement payments; $1,410,000 in plaintiffs' attorneys' fees; $40,000 in plaintiffs' attorneys' costs; $20,000 in PAGA penalties paid to the California Labor and Workforce Development Agency; and the remaining amount to roughly 53,000 class members or approximately $57 per class member after additional administrative costs paid to the claims administrator.

The Bank and MDL plaintiffs' counsel are now attempting to achieve a global settlement of the MDL claims asserted by both the retail banking center employees as well as the call center employees.  Toward that end, the court stayed these proceedings until March 15, 2013.  In their motion to lift the stay, the named plaintiffs in the *Lopez* case assert that their counsel has not been invited or included in the settlement negotiations and they express concern that the "*Lopez* settlement" is in jeopardy of modification or some other breach (to the detriment of the *Lopez* class members) in connection with the global settlement of the MDL claims.  In their motion, the *Lopez* plaintiffs seek an order that MDL plaintiffs' counsel and the Bank may not engage in any settlement discussions or any settlement that would alter the *Lopez* settlement in any way; that the Bank must specifically perform its obligations under the *Lopez* settlement; that counsel for the *Lopez* plaintiffs be appointed "subclass counsel" for the *Lopez* settlement class with sole authority to proceed in the best interests of the *Lopez* settlement class; that the named plaintiffs in the *Lopez* action be named "subclass representatives" for the *Lopez* settlement class; and that the case be remanded to the Northern District of California for final approval of the *Lopez* settlement.

The *Lopez* plaintiffs' motion to lift the stay and specific requests for relief rest on three faulty premises—that this court and the parties have intentionally kept the *Lopez* case "separate" from the MDL proceeding; that MDL plaintiffs' lead counsel have unwaivable conflicts of interest both in representing the *Lopez* class and the MDL class as well as in their efforts to maximize their attorneys' fees; and that plaintiffs' MDL lead counsel and the Bank are colluding with respect to settlement by agreeing to "redistribute" the *Lopez* settlement to the entire MDL

class, thereby diluting the *Lopez* settlement significantly.    The court addresses each of these premises below.

**_Lopez_ was Consolidated with Other Cases in the MDL for Pretrial Purposes**

The court begins with the *Lopez* plaintiffs' assertion that the court and the parties have intentionally kept the *Lopez* case "separate from the instant MDL proceeding."  According to the *Lopez* plaintiffs, after the JPML transferred *Lopez* to the MDL, neither the parties nor the court ever actually consolidated the case with the MDL and plaintiffs never amended the consolidated complaint—filed prior to the transfer of *Lopez*—to include the *Lopez* case.  The *Lopez* plaintiffs assert their belief that "the decision not to include them into an amended consolidated complaint was intentional, by all the parties and this Court."  That belief is inaccurate.

The JPML's transfer order concerning the *Lopez* case expressly states that the action is "transferred under 28 U.S.C. § 1407 to the District of Kansas for the reasons stated in the order of April 14, 2010, and, with the consent of that court, assigned to the Honorable John W. Lungstrum."  The statute pursuant to which the Panel transferred *Lopez*—28 U.S.C. § 1407— clearly gives the JPML the exclusive authority to transfer cases "for coordinated or consolidated pretrial proceedings."  The statute does not contemplate any additional order from the district court to whom the consolidated cases are assigned.  Because the Panel ordered that *Lopez* be consolidated with the other cases in the MDL, the court was not required or authorized to enter a separate "consolidation" order regarding the *Lopez* case.  Consistent with this court's practice in MDL cases, the clerk of the court simply entered a docket annotation acknowledging receipt of the original record from the Northern District of California consistent with the Panel's transfer

order.  In addition, several other tag-along actions were transferred to the MDL after the filing of the consolidated complaint and no separate "consolidation" orders were entered or contemplated by the court.  Finally, plaintiffs were not required to amend the consolidated complaint because that complaint already encompassed the claims of the *Lopez* class members and included named plaintiffs that adequately represented the *Lopez* class members.

To be clear, while the *Lopez* case, as with all cases transferred to the MDL, retains its separate identity despite consolidation in the sense that it did not merge with other cases to become a single lawsuit, *see In re Bank of America Wage & Hour Employment Lit.*, 2010 WL 4180530, at *3 (D. Kan. Oct. 20, 2010) (citing cases), the *Lopez* case nonetheless has been consolidated with the other cases in the MDL for pretrial purposes.  The court, then, rejects any notion that it purposefully declined to consolidate *Lopez* with the other cases pending in the MDL.  And, assuming for the sake of argument that the parties intended such a result, such intent would have no bearing on the reality of these proceedings—that *Lopez* is part of the consolidated MDL litigation.

**The *Lopez* Plaintiffs Have Not Demonstrated Any Conflicts of Interest**

The *Lopez* plaintiffs also assert that MDL plaintiffs' lead counsel have a conflict of interest in representing both the "*Lopez* settlement class" and the larger MDL class in that MDL plaintiffs' counsel has "no interest" in protecting the $4.7 million settlement obtained by the *Lopez* class and, instead, want to "share" those funds with the broader MDL class.  According to the *Lopez* plaintiffs, MDL plaintiffs' counsel, in light of the court's denial of Rule 23 certification, must believe that they cannot settle the MDL claims for a sufficient sum if the $4.7

million settlement stands, so they intend to place those funds "on the settlement table to use as needed."

To begin, there is no discernible "*Lopez* settlement class" at this juncture. The *Lopez* settlement agreement defines the settlement class as those eligible employees who do not timely elect to opt out of the settlement. Because the settlement was enjoined prior to the issuance of any notice to class members, those class members have not had an opportunity to opt out of the settlement or object to the settlement. In other words, no separate *Lopez* settlement class exists for separate representation in any event. Moreover, there is no evidence in the record that MDL plaintiffs' counsel intend to disregard the *Lopez* settlement (although the court expresses no opinion on the enforceability of that settlement at this juncture) or otherwise intend to jeopardize the interests of the *Lopez* class members in favor of the interests of the broader MDL class.[2] The *Lopez* plaintiffs only speculate about MDL plaintiffs' counsel's intentions based on MDL plaintiffs' counsel's refusal to confirm that the *Lopez* settlement will remain intact. At this point, then, there is nothing in counsel's representation of the *Lopez* class and the broader MDL class that causes concern for the court. Once a proposed settlement is reached, the *Lopez* plaintiffs may object to that settlement if they believe they have been prejudiced by the settlement and the court, at that time, can assess the fairness of the proposed settlement. *See Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 161 (7th Cir. 1988) ("[C]onflicts of

---

[2] In this respect (and many others which the court declines to address), this case is easily distinguished from the cases relied upon by the *Lopez* plaintiffs, *Piambino v. Bailey*, 610 F.2d 1306 (5th Cir. 1980) ("*Piambino I*") and *Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ("*Piambino II*"). In *Piambino*, the courts set aside a settlement and fee award which were unfair to a minority segment of the class. Unlike the situation here, where the parties are in the midst of settlement negotiations, the parties in *Piambino* had obtained final approval of their settlement from the district court which was ultimately set aside.

interest are built into the device of the class action, where a single lawyer may be representing a class consisting of thousands of persons not all of whom will have identical interests and views. Recognizing that strict application of rules on attorney conduct that were designed with simpler litigation in mind might make the class-action device unworkable in many cases, the courts insist that a serious conflict be shown before they will take remedial or disciplinary action.").

In a related vein, the *Lopez* plaintiffs contend that MDL plaintiffs' lead counsel have an unwaivable conflict of interest with respect to their efforts to obtain a larger fee award. According to the *Lopez* plaintiffs, MDL plaintiffs' counsel, in all likelihood, will seek to reallocate settlement funds intended for the *Lopez* settlement class to the entire MDL class so that they can "attach their names" to a larger settlement figure and, accordingly, request and justify a larger fee award —all at the expense of the *Lopez* settlement class.  Of course, it bears repeating that there is no "*Lopez* settlement class" because the *Lopez* class never received notice of the settlement and never had the opportunity to object to or opt out of any settlement.  No settlement was ever finalized for the *Lopez* class.  In any event, the *Lopez* plaintiffs submit no evidence supporting any effort or intention by MDL plaintiffs' counsel to "reallocate" settlement funds for the purpose of obtaining a larger fee award.  Similarly, the *Lopez* plaintiffs submit no evidence that MDL plaintiffs' counsel are presently acting against the interest of any class member.  In the absence of any such evidence, any concerns on the part of the *Lopez* plaintiffs that MDL plaintiffs' counsel will attempt to maximize their fee award at the expense of certain class members are speculative.  If the *Lopez* plaintiffs continue to have these concerns after MDL plaintiffs' counsel has submitted a specific fee request (or a proposed settlement

agreement reflecting a specific fee arrangement) to the court for approval, then they may assert an objection to the settlement and fee request at that time.

**There is No Evidence of Collusive Settlement Negotiations**

Finally, the *Lopez* plaintiffs make a number of conclusory allegations and inferences that MDL plaintiffs' lead counsel and the Bank have engaged in collusive settlement negotiations. Specifically, the *Lopez* plaintiffs speculate that the parties will agree to a "reverse auction" of the section 226 claims in *Lopez* designed to undercut the *Lopez* settlement.  According to the *Lopez* plaintiffs, it "appears" that MDL plaintiffs' lead counsel and the Bank will seek to move money allocated to the *Lopez* settlement class members to other class members or will require a broader release from what the movants term the *Lopez* settlement class members than the release achieved in the so-called *Lopez* settlement.  The *Lopez* plaintiffs further assert that the Bank, having now defeated certification of a Rule 23 class, has "buyer's remorse" over the *Lopez* settlement and seeks a second crack at that settlement in an effort to get a "better deal."  In essence, the *Lopez* plaintiffs believe that MDL plaintiffs' counsel and the Bank are attempting to structure a global settlement of all the claims in this MDL to the detriment of the *Lopez* settlement class members.

Significantly, the *Lopez* plaintiffs direct the court to no evidence whatsoever supporting their allegations of collusion.  Nothing in the record indicates to the court that MDL plaintiffs' counsel and the Bank have engaged in collusive settlement negotiations and the Bank represents to the court in its submissions that it has not represented to the *Lopez* plaintiffs that it intends to "move money" from the *Lopez* settlement to the rest of the class or that it has made any

representations about the source of any settlement funds.  In the absence of any evidence that MDL plaintiffs' lead counsel and the Bank have engaged in collusive settlement negotiations, and in the absence of a settlement agreement in the record from which the court might be able to discern collusion between MDL plaintiffs' counsel and the Bank, the court has no basis to conclude that the parties have engaged in anything other than good faith settlement negotiations thus far.  Once the parties submit a proposed settlement agreement to the court for approval, the court will be in a position to assess whether the settlement appears to be the result of arm's length negotiations or whether it appears to be collusive in one or more respects.

**Summary**

The *Lopez* case, as part of this MDL, is subject to the court's practice and procedure order, which gives the exclusive authority for settlement negotiations to MDL plaintiffs' lead counsel.  Nothing submitted by the *Lopez* plaintiffs demonstrates that the court should modify that aspect of its practice and procedure order or that the *Lopez* plaintiffs are entitled to any of the relief that they request.  As indicated throughout this memorandum and order, the *Lopez* plaintiffs remain free to object to any proposed settlement that is ultimately submitted to the court to the extent they believe they are prejudiced by that proposed settlement.  At this time, however, there is nothing in the record and no evidence submitted by the *Lopez* plaintiffs that warrants a lifting of the stay.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs Albert Lopez and Rene Pompa's motion to lift stay (doc. 616) is denied.

**IT IS SO ORDERED.**


Dated this 19th day of February, 2013, at Kansas City, Kansas.


                                        <u>s/ John W. Lungstrum</u>
                                        John W. Lungstrum
                                        United States District Judge